STATE EX REL. SUMMA *v.* STARKE CIRCUIT COURT, MURRAY, JUDGE, ETC.

[No. 29,625.  Filed April 21, 1958.]

*Robert Salek,* of LaPorte, for relator.

*Robert H. Moore,* of Gary, for respondents.

ACHOR, J.—On February 1, 1956, in the Starke Circuit Court, Carmella Weinberg (now Summa, relator herein) was granted a divorce from Joseph Weinberg and custody of their five-year-old son, and an order to pay support for said child was made against the defendant-husband.

On August 21, 1956, the ex-husband filed a petition asking among other things for modification of the order of support and the fixing of visiting privileges. (On August 28, 1956, relator herein remarried and thereafter moved to Chicago taking said child with her.)

On March 30, 1957, the said court entered a judgment and, among other things, granted the ex-husband "possession" of said minor child for a period of 30 days during the month of July of each year thereafter. (An appeal from this judgment is being prosecuted to the Appellate Court by the ex-husband.)

Thereafter, on the 3rd day of December, 1957, this relator filed in the Starke Circuit Court her petition for citation of the ex-husband who was in arrears $475.00 in support payments, as ordered at the time of their divorce, since the last week in June, 1957. At the hearing held on January 7, 1958, it developed that the relator had refused visiting privileges to the father and ex-husband during the month of July 1957, as ordered.

The court found that the ex-husband was in contempt of court by reason of his failure to pay the support as ordered. It thereupon ordered said ex-husband to deliver a check for $475 to the court. However, payment of said sum to relator was made contingent upon her delivery of their child from her home in Chicago to the court, to be "transferred" to his father for a period of 30 days. The order of the court in this particular is as follows:

"Upon the defendant's manually investing this Court with a check in said amount, within the time specified, the Court will proceed to deliver said check to Carmella Summa upon her delivering in open court the actual physical custody of Jerome Weinberg at which time the custody of said child is to be transferred for 30 days to the defendant and the defendant is ordered to abide this order in all respects and during said 30 days period the defendant is to arrange for suitable and adequate tutoring facilities for his son, so he won't fall behind in his school work and the defendant is ordered to re-deliver said son to the plaintiff at the end of said 30 days to the plaintiff at her residence in Chicago. . . .

"If the defendant complies with the court's order herein by manually tendering to the judge a check in the amount of $475.00 within the time specified, the Court will immediately notify the plaintiff (thru her attorneys of that fact) and if the plaintiff fails to deliver said Jerome Weinberg

into open court with necessary clothing and his school books, within one week after the Court has so notified the plaintiff as aforesaid—the Court indicates that it will return the check to the defendant and said defendant will be deemed to have purged himself of the contempt heretofore adjudged herein this date."

Relator now asks this court to mandate respondent to expunge from the records of court that part of its decree as quoted above. It is relator's position that the court had no jurisdiction to make that part of the decree for the reason that in effect it modified the judgments of February 1, 1956 and March 30, 1957 after the term of court in which said judgments were entered, and that no pleading to so modify the prior decrees had been filed and no notice of a hearing upon said issue had been served upon the relator.

We are here presented with one of the most vexing problems growing out of divorce, namely, the support of children and the right of both parents to enjoy the affection and share the companionship of their children. The problem is particularly acute under circumstances where, as here, the opportunity of such companionship is either denied to or made untenable for the father, who nevertheless is required to pay support under threat of contempt of court.

Admittedly, in all such cases the welfare of the child must receive first consideration by the court, and this is true even though its parents are unreasonable, recalcitrant or even contemptuous of the court in regard to their behavior toward each other. However, the welfare of a child not only requires that it be supported; a child also needs the affection and companionship of both its parents insofar as their unnatural position makes this possible. Therefore, the visiting privileges with the father as decreed by the court are a

matter of proper care and custody with which relator was charged. Furthermore, in this case both parents, whether it be the mother charged with the responsibility of the care and custody or the father charged with the financial support of the child, are thereby as a matter of equity and fair dealing entitled to share in the affection and companionship of the child, as circumstances permit. These considerations are inseparably related to the welfare of the child and the reciprocal equities between the parties. Therefore, with regard to the parties themselves, the behavior of the complaining party is always an issue in mitigation of the alleged contempt of the other, without being specially pleaded, when either parent raises the issue of contempt.

Here relator asks the court to exercise its extraordinary equitable authority to punish the father for contempt for his failure to comply with the order of the court regarding the payment of support. However, relator admits that she herself intentionally violated the court's order regarding her care and custody of their child by refusing to give the father "possession" of their child during the month of July 1957, since which time the delinquency in support had accrued. In this case it appears that both parents wilfully ignored the order of the court and took the law into their own hands. The court found the father in contempt and, in effect, determined that the mother did not come into court with clean hands.

Can this court say that the trial court was *without jurisdiction* to require that relator cleanse her own hands by belatedly doing that which she had been ordered to do, before she could receive the benefits of the conditions which it imposed upon the ex-

husband as a purge of his contempt? We think not. Having invoked the equitable jurisdiction of the court for her benefit against her ex-husband, relator thereby subjected herself to the jurisdiction of the court with regard to the burdens which she assumed by reason of the proceedings.[1]

If the method employed by respondent court for the accomplishment of the respective equities of the parties was an abuse of discretion, relator's remedy would be by appeal, not by mandate. This court has repeatedly held that errors in proceedings regarding which the court has jurisdiction to act, cannot be by mandamus, but remedy is by appeal. *Gregg, Justice of the Peace* v. *State ex rel. Branch* (1898), 151 Ind. 241, 51 N. E. 359; *State ex rel.* v. *Board, etc.* (1925), 196 Ind. 281, 148 N. E. 198; *State ex rel. Mock* v. *Whitley Circuit Court* (1937), 212 Ind. 224, 8 N. E. 2d 829; *State ex rel. Tomlinson* v. *Jeffrey* (1952), 231 Ind. 101, 107 N. E. 2d 1; *State ex rel. Steers, etc.* v. *Hancock Cir. Court, etc.* (1953), 232 Ind. 384, 112 N. E. 2d 855; *State ex rel. Beatty* v. *Nichols, Sp. J., etc.* (1954), 233 Ind. 432, 120 N. E. 2d 407.

The alternative writ of mandate heretofore issued is set aside and the petition for writ of mandate is denied.

Emmert, C. J., Arterburn, Bobbitt & Landis, JJ., concur.

NOTE.—Reported in 149 N. E. 2d 541.

1. "The maxim that 'he who comes into equity must come with clean hands' is an ancient and favorite precept of the chancery court. The principle announced thereby is recognized as being a fundamental of equity jurisprudence. It signifies that a litigant may be denied relief by a court of chancery on the ground that his conduct has been inequitable. Indeed, the principle is expressed that 'he that hath committed inequity shall not have equity.' " 19 Am. Jur., §469, pp. 323-324.