Norman PLOUGH, Defendant-Appellant,

v.

FARMERS STATE BANK OF HENRY COUNTY, Plaintiff-Appellee.

No. 1–181A21.

Court of Appeals of Indiana, First District.

June 22, 1982.

James R. White, P. C., New Castle, for defendant-appellant.

Mark C. Stamper, Wisehart & Stamper, Middletown, for plaintiff-appellee.

NEAL, Judge.

Defendant-appellant Norman Plough appeals the Henry Superior Court's denial of his motion to set aside a default judgment under Ind.Rules of Procedure, Trial Rule 60(B).

We affirm.

## STATEMENT OF THE FACTS

Norman Plough (Plough) was the president and principal owner of a car dealership known as Plough Chrysler Products, Inc. Plough sold new cars which were financed by the First National Bank of New Castle (First National) and used cars which were financed by the plaintiff-appellee, Farmers State Bank of Henry County (Farmers).

Farmers financed Plough Chrysler Products' used cars on an individual basis, taking a separate promissory note for the book value of each car. The notes were personally guaranteed by Plough and his wife, Bonita. Farmers took a security interest in these cars under a separate security agreement. Farmers filed a financing statement for the used cars in June 1976. However, First National had filed a financing statement covering new and used cars in April 1976. At issue in this case are nineteen of the promissory notes for the used cars, dating from May 18, 1977 through July 22, 1977, and totalling $39,155.38. In addition to the used car notes, Farmers held a $36,000 mortgage dated March 14, 1977, and covering the business property of Plough Chrysler Products. Farmers also loaned Plough $36,000 represented by five promissory notes dating from May 6, 1977 to May 23, 1977.

In August 1977 Plough closed the business. Plough cooperated with the repossession of the used cars, and a sale was held in September 1977 which yielded $33,325. Farmers and First National agreed to divide this sum equally, reducing Plough's debt to Farmers for the used cars to $21,742.25. Farmers agreed in writing to release the five promissory notes and the mortgage; in exchange Plough executed a quit claim deed to the business property on November 9, 1977.

Nearly one year later on August 11, 1978, Farmers filed its complaint for a deficiency judgment in the Henry Superior Court. The complaint alleged that Plough and his wife, Bonita, owed a total of $23,584.90 in principal and interest on the nineteen used car notes. When service was attempted on August 23, 1978, the Ploughs had left to set up permanent residence in Florida, and their house was vacant. Service was obtained by publication in a Henry County newspaper. The parties do not dispute that service was properly obtained and that the Ploughs had no actual notice of the suit. On November 9, 1978, the trial court entered a default judgment against the Ploughs for $29,481.12 including accrued interest and attorney fees. Farmers then filed suit on this judgment in Florida in April 1979. On August 15, 1979, the Ploughs filed their T.R. 60(B) motion to set aside the default judgment with accompanying affidavits attesting their lack of notice of the Indiana action.

The Ploughs raised four defenses to Farmers' complaint: (1) The guaranty agreement signed by Bonita, which was the sole basis of her liability on the notes, was not attached to the original complaint, and therefore the complaint was insufficient as to Bonita; (2) the promissory notes at issue, which had been used to finance used cars, were covered by a release agreement; (3) the used cars covered by the security agreement with Farmers were not sold in a commercially reasonable manner; and (4) Farmers misapplied the proceeds of the sale of the used cars by giving fifty percent to First National and applying only the remainder to Plough's debt.

The trial court conducted two hearings on the Ploughs' motion to set aside. In the first hearing the Ploughs' attorney was prepared to present his clients' affidavits on the issue of notice, argue the legal issues of the case, and discuss the defenses his clients had raised. The attorney for Farmers came prepared for a full evidentiary hearing on the merits of the motion and the merits of the Ploughs' proposed defenses. The Ploughs' attorney objected that T.R. 60 did not contemplate a full hearing on the merits of a defendant's defenses. After considerable argument and discussion of the issue, the trial court granted a continuance so that it could hear evidence on both sides relating to Plough's defenses.

At the second hearing the Ploughs appeared to testify and were represented by a different attorney. Farmers called several witnesses to rebut the Ploughs' testimony regarding their defenses. The Ploughs' motion was granted as to Bonita Plough, but denied as to Norman Plough who brings this appeal.

## ISSUES

Plough raises the following issues in his brief:

I. Whether the trial court abused its discretion by holding a full evidentiary hearing on the merits of Plough's defenses; and

II. Whether the decision of the trial court was contrary to law.

### DISCUSSION AND DECISION

■ Issue I was not raised in the motion to correct errors and has not been preserved for review. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). *Hockelberg v. Farm Bureau Insurance Company*, (1980) Ind.App., 407 N.E.2d 1160; *Indiana Motorcycle Association v. Hudson*, (1980) Ind.App., 399 N.E.2d 775. We also note that despite their objections the Ploughs' attorneys agreed to and actively participated throughout the second hearing. Much of Farmers' evidence was received without objection, and the Ploughs did not ask that their objection be deemed to continue throughout the hearing. We will confine our discussion to Issue II.

Trial Rule 60(B) provides in pertinent part:

"On motion and upon such terms as are just the court *may* relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

\* \* \* \* \* \*

(4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings[.]" (Emphasis added.)

Paragraph (D) further provides:

"In passing upon a motion allowed by subdivision (B) of this rule the court shall hear any pertinent evidence, allow new parties to be served with summons, allow discovery, grant relief as provided under Rule 59 or otherwise as permitted by subdivision (B) of this rule."

■ The requirement that movants under T.R. 60(B)(4) present a prima facie meritorious defense is not found in the rule but is firmly established by case law. *See Nash v. Cars*, (1883) 92 Ind. 216; *Hoag v. Jeffers*, (1928) 201 Ind. 249, 159 N.E. 753; *Cantwell v. Cantwell*, (1957) 237 Ind. 168, 143 N.E.2d 275 *cert. denied* 356 U.S. 225, 78 S.Ct. 700, 2 L.Ed.2d 712, *appeal dismissed* 356 U.S. 954, 78 S.Ct. 913, 2 L.Ed.2d 847; *Sanders v. Kerwin*, (1980) Ind.App., 413 N.E.2d 668; *Fitzgerald v. Brown*, (1976) 168 Ind.App. 586, 344 N.E.2d 309; *Kreczmer v. Allied Construction Company*, (1972) 152 Ind.App. 665, 284 N.E.2d 869; *Strickland v. O'Rear*, (1961) 134 Ind.App. 247, 176 N.E.2d 902. In *Cantwell, supra*, 237 Ind. at 176–178, 143 N.E.2d 275 the court said:

" 'In general, the party seeking the aid of equity to enjoin a judgment at law against him must not only show some ground for interference, within the doctrine of the text, but must also show that he has a good and sufficient defense to the cause of action, so that on a re-examination and retrial *the result would be different.*' [Pomeroy's Equity Jurisprudence (5th Ed.) § 1364, p. 985.]

\* \* \* \* \* \*

The rule requiring a meritorious defense to be shown before a judgment will be set aside, in a proceeding such as the one before us, is a reasonable condition interposed by courts of equity. This is not unreasonable to a defendant, for under the authorities the only showing such defendant need make to invoke the aid of equity in this respect is to indicate he has a prima facie meritorius [sic] defense to the judgment he seeks to set aside. This condition preliminary to equity's taking juridiction is premised upon the ground that equity will not interfere with a judgment recovered at law, unless such judgment is unjust or unconscionable. There is a maxim that courts of equity will not do or require the doing of a vain or useless thing, yet there is nothing more useless or vain than the setting aside of a judgment although no defense to it exists. . . . Equity is also desirous of preventing circuity of action, and this purpose is served by equity's refusal to upset a judgment when the defendant petition-

er had set forth nothing to indicate that *if the cause were tried again on the merits a different result would be reached.*" (Citations and footnotes omitted. Emphasis added.)

In proceedings under T.R. 60(B), the moving party bears the burden of proof. *Sanders, supra; In re the Marriage of Jones* (1979) Ind.App., 389 N.E.2d 338; *Fitzgerald, supra.* It is also true that default judgments are not favored, and any doubt of their propriety is resolved in favor of the defaulted party. *Henderson v. American Optical Company*, (1981) Ind.App., 418 N.E.2d 549. The decision to grant relief under T.R. 60(B) is left to the equitable discretion of the trial court. *Jones, supra; Strickland, supra.* This court does not reweigh the evidence. *Nash, supra.* As our Supreme Court said in *Hoag, supra*, 201 Ind. at 253, 159 N.E.2d 753:

> "It is not the duty nor privilege of this court to weigh the evidence in such cases as the one at bar, any more than it will weigh evidence in other appeal cases. . . .
>
> It is the function of the trial court to decide the question whether or not the default judgment in the particular case must be set aside, which action requires it to determine the sufficiency of the evidence which bears upon the question of the mistake, inadvertence, surprise or excusable neglect of the plaintiff. . . ." (Citations omitted.)

On review this court will reverse only for abuse of discretion. *Jones, supra; State on Relation of Thrasher v. Hayes*, (1978) Ind. App., 378 N.E.2d 924; *Strickland, supra.* "An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom." *Dunbar v. Dunbar*, (1969) 145 Ind.App. 479, 483, 251 N.E.2d 468; *Jones, supra*, at 341; *Thrasher, supra.*

In the case at bar, Plough contends that he met his burden of proving a prima facie meritorious defense and that the trial court's refusal to set aside the default judgment was "contrary to the evidence and contrary to law." A decision is contrary to law only if the evidence and reasonable inferences from it lead to only one conclusion, and the trial court has reached the opposite conclusion. *Reynolds v. Meehan*, (1978) Ind.App., 375 N.E.2d 1119. A "prima facie case" is one which presents "such evidence as is sufficient to establish a given fact and which if not contradicted will remain sufficient." *Rene's Restaurant Corp. v. Fro-Du-Co Corporation*, (1965) 137 Ind.App. 559, 564, 210 N.E.2d 385; *Floyd v. Jay County Rural Electric Membership Corporation*, (1980) Ind.App., 405 N.E.2d 630. We will now examine the three defenses offered by Plough.

### Commercial Reasonableness of the Sale

Plough's only evidence was his own testimony that the price obtained for the used cars was too low (approximately six cars were sold for "half the wholesale value") and that the cars were not sold on his lot, where he would have preferred the sale to have been held. Plough admits he was informed about the manner of sale before it occurred, but raised no objections until after the sale. He offered no evidence that the location of the sale had any effect on the price received. Furthermore, Plough offered no evidence that the price received for the used cars was unreasonably low or that the sale was not conducted according to reasonable commercial practices among used car dealers.

Ind.Code 26-1-9-507(2) states:

> "*The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.* If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a

commercially reasonable manner." (Emphasis added.)

Section 507 provides the debtor's remedy for a commercially unreasonable sale, and Plough has filed no action under this section. In the case at bar, commercial reasonableness would not bar Farmers from seeking a deficiency judgment but could only affect the amount of the deficiency it can recover. *Hall v. Owen County State Bank*, (1977) 175 Ind.App. 150, 370 N.E.2d 918. However, Plough failed to provide prima facie evidence that the sale was commercially unreasonable. We cannot conclude that the trial court's decision as to this defense was contrary to law.

*Release*

■■■ After Plough went out of business he owed Farmers $36,000 in unsecured notes dated from May 6 to May 23, 1977, and over $38,305.76 in secured notes through which he financed his used cars from 1975 through 1977. On March 14, 1977, the Ploughs executed a real estate mortgage with Farmers covering the business property. This agreement stated in part:

> "This Mortgage is given to secure the performance of the provisions hereof and the payment of the indebtedness of the Mortgagors to the Bank *as evidenced by a promissory note of even date herewith* in the prinicipal amount of ..Thirty-Six.Thousand and.no/100.********* ***************************** ........................ ($. 36,000.00. . .) Dollars, executed by the Mortgagors and payable to the order of the Bank, repayable in installments together with interest as provided for in said note, the final installment thereof being due and payable on .............. .............., 19...., all without relief from valuation or appraisement laws and with attorney's fees (hereinafter referred to as 'Note')." (Emphasis added.)

The mortgage was recorded on March 15, 1977. On November 9, 1977, the Ploughs and Farmers entered into a release agreement. This agreement released Plough from five enumerated promissory notes for the following amounts:

$ 1,500 dated May 23, 1977

7,500 dated May 6, 1977

10,000 dated May 18, 1977

7,500 dated May 6, 1977

9,500 dated May 6, 1977

We note that these amounts total $36,000. Also released was the mortgage in the amount of $36,000. The release was given in exchange for a quit claim deed to the business property covered by the mortgage.

In Plough's brief in support of his motion to set aside the default judgment, he made the following argument that all of his debts to Farmers, including the used car notes, were intended to be released by the agreement.

> "The release covers an indemnifying mortgage issued by the Ploughs to plaintiff.... Said mortgage and all the underlying obligations are also released by the terms of a quitclaim deed to plaintiff.... The mortgage says it covers a note executed on the same date. No such note exists. Defendants executed numerous notes to plaintiff, among them the used car notes at issue. It appears that the mortgage was meant to secure these notes, among others, and that the release and quitclaim on the mortgage released defendants on the notes at issue."

Plough also relies on a letter dated June 15, 1979, in which counsel for Farmers says that he recalls that the release related only to the debts on the used cars at Plough's lot, debts which are not listed in the release.

We fail to see how the arguments on these documents, even when read together, could create a prima facie case. The letter from Farmers' counsel is evidence only of his *recollection* of the terms of the agreement, not of the intent of the parties nearly two years earlier. Moreover, the letter says that all of his obligations were not released. The amount of the debt referred to in the mortgage is exactly the same as the total notes released in the agreement. Plough offered no evidence which overcomes the clear meaning of the release agreement, that only the debts listed in the agreement were released. The trial court was not required as a matter of law to grant relief based on such an argument.

*Misapplication of Proceeds*

 When First National began financing Plough's new cars it took a security interest in new and used cars which it perfected. Plough claims that he agreed to give only the new cars as collateral and that First National erroneously took a security interest in the new and used cars. Plough testified that he brought this alleged error to First National's attention. Apparently First National did not change the agreement although Plough claims it promised to do so. Farmers failed to perfect its security interest in the used cars until after First National's financing statement was filed, and therefore Farmers' lien was junior to that of First National. The sale of the used cars yielded $33,325. The banks agreed to divide these proceeds equally leaving Farmers $16,662.50. This reduced Plough's debt to $21,742.25 including the expenses of the repossession.

Plough seems to argue that Farmers' "negligent" failure to perfect its security interest, First National's "erroneous" security agreement, and the failure of the banks to resolve the dispute over the collateral so that First National would have a security interest only in the new cars constitute a defense to Farmers' deficiency suit. Besides notifying both banks of the "error" and requesting that it be "corrected," Plough apparently took no further action to correct the problem from April 1976 to August 1977 when he closed the business. He does not allege fraud and does not deny that First National was the senior lienholder. The banks' agreement to share equally in the proceeds may have improved Farmers' position, and Plough offered no proof to the contrary. In short, there was no evidence that Farmers misapplied the proceeds or that the banks' agreement harmed Plough in view of the fact that First National's lien had priority over Farmers'. Only Plough testified that First National erred when it included used cars in the collateral, and the court was not required to believe his testimony. This does not constitute a prima facie meritorious defense as a matter of law.

Plough also argues that the trial court abused its discretion in setting aside the judgment against Bonita without granting him the same relief. He contends that both of them were entitled to relief because "the same factual situation as to service by publication, residence in Florida, time of leaving the State of Indiana prevailed as to both defendants." However, Bonita had an additional defense not available to Plough. The guaranty agreement forming the sole basis of her liability was not attached to the complaint. She testified at the hearing that she was not directly involved in the business and did not know what the agreement was. Plough's liability was based on another contract and his endorsement of the notes. Clearly the trial court did not abuse its discretion in refusing to grant relief to both parties.

For the reasons given above we hold that the trial court's decision to deny Plough's motion to set aside the default judgment was not contrary to law. The decision is affirmed.

Affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.