## In re The MARRIAGE OF Sheila Hamanaka DAVIS, Petitioner-Appellant,

### and

## Dennis L. Davis, Respondent-Appellee.

### No. 3-182A14.

Court of Appeals of Indiana,
Third District.

Nov. 10, 1982.

---

Robert Leirer Justice, Logansport, for petitioner-appellant.

Richard C. Wolter, Gary, for respondent-appellee.

HOFFMAN, Presiding Judge.

The marriage of Sheila Hamanaka Davis and Dennis L. Davis was dissolved on February 26, 1980, at which time Sheila was granted custody of the parties' two minor children. On July 10, 1981, Dennis filed a petition to modify the custody order, which, after a hearing, was granted. Sheila now brings this appeal from the order granting a change in custody and alleges the following errors:

(1) the trial court abused its discretion in modifying custody because there was insufficient evidence of a substantial, continuing change of circumstances occurring since the original custody order thereby rendering that order unreasonable;

(2) the trial court abused its discretion in modifying custody because there was insufficient evidence that a modification was in the children's best interest;

(3) that it was contrary to law for the trial court to consider a possible out-of-state move as a significant factor in the modification of custody; and

(4) that it was contrary to law for the trial court to refuse to consider the racial characteristics and ethnic heritage of the children in modifying custody.

IC 1971, 31–1–11.5–22(d) (Burns 1980 Repl.) provides, in part:

"The court[,] in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable."

Sheila contends that there was no evidence of a change in circumstances, no evidence of a continuing change, and no evidence that the status quo was unreasonable.

■ A long line of Indiana cases clearly distinguishes between standards governing trial courts and appellate courts in custody modification cases, leaving to trial courts the question of whether there has been a change in conditions, while limiting appellate courts to a determination of whether the evidence could serve as a rational basis for the trial court's findings. *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, supplemented as to costs, 262 Ind. 403, 316 N.E.2d 828. Questions of child custody involve sound judicial discretion rather than a hard and fast rule of law.

The reviewing court will not disturb the judgment of the trial court unless the record discloses a clear abuse of discretion. *Renard v. Renard* (1956), 126 Ind.App. 245, 132 N.E.2d 278. In order to constitute an abuse of discretion in respect to a custody modification, the trial court's decision must be one that is clearly against the logic and effect of facts and circumstances before the court. *Marshall,* supra; *Needham v. Needham* (1980), Ind.App., 408 N.E.2d 562.

■ The record in this instance reveals that Sheila had moved several times and that at the time of the modification hearing, she and the children had no permanent home. When Sheila was maintaining an apartment, it was in a state of disarray, to the extent that the children had difficulty finding their clothing. On occasion, the children were left in the apartment with a babysitter and no substantial food could be found in the apartment. They were also sent to school with inadequate lunches. Sheila's methods of discipline were questionable, such as sending the children off to school carrying their coats and shoes.

Additionally, Sheila had taken the children to New York for an extended vacation. She then sent their belongings to New York and informed Dennis that she and the children were moving to New York. It was not until after these proceedings were initiated that she petitioned the court for permission to remove the children.

On the other hand, Dennis had maintained the same home, in the same neighborhood, that the parties had had before their marriage was dissolved. Although Dennis did not have custody of the children, they spent approximately 50% of their time with him. The children also stayed with Dennis when they were ill. Dennis took care of their day-to-day needs such as haircuts, clothing, swimming lessons, bicycles, and tuition. When the time came to leave Dennis and return to Sheila after a visit, one child often threw a tantrum when Sheila came to pick the children up. During the course of the proceedings, Dennis married a woman who had assisted him in caring for the children for almost two years.

In sum, the evidence established that from the time of the original custody award, there had been a change in circumstances. Sheila's residential status changed frequently, while Dennis's remained stable. Her care of the children regarding their food, clothing, and discipline became questionable, whereas at the time of the original decree, Dennis did not anticipate these problems. This change was obviously continuous, since the problems continued throughout the years from the original award to the modification and in fact at the time of the modification hearing Sheila was intending yet another change in residence. The status quo was unreasonable in light of the fact that the children's care and well-being and Dennis's continued extensive visitation were all brought into question by Sheila's actions.

On appeal, the reviewing court may not substitute its judgment for that of the trial court with respect to whether a change of custody should have been granted. *Larkin v. Larkin* (1975), 164 Ind.App. 46, 326 N.E.2d 618. The record in this instance discloses evidence and reasonable inferences which serve as a rational basis to support the decision of the trial court. Sheila has not established that the trial court abused its discretion in modifying the original custody award.

Sheila also argues that the trial court abused its discretion in modifying custody because there was insufficient evidence that a modification was in the children's best interests.

■ The guiding principle in determining whether to modify the custody provisions of a dissolution decree is the best interests of the children. *Franklin v. Franklin* (1976), 169 Ind.App. 537, 349 N.E.2d 210. When it can be shown by the party petitioning for modification that such changes have taken place that the prior order is no longer in the best interests of the child, then the prior order must be modified. *Landing v. Landing* (1972), 152 Ind.App. 660, 284 N.E.2d 857.

■ The evidence which was discussed previously provides sufficient support for the trial court's determination that it was in the children's best interests that they live with their father. Dennis had established a stable home for the children and no evidence was presented which gave rise to any question concerning the care and well-being of the children when they were with Dennis. Dennis is the one who cared for them in sickness; he saw to it that they were groomed; and even Sheila testified that the children requested visits with their father and enjoyed his new wife's cooking. Dennis intended to remain in the community where the children were established. Sheila had already sent some of the children's belongings to New York.

Again, Sheila has not met her burden of demonstrating that the trial court abused its discretion in awarding custody of the children to Dennis.

■ Next, Sheila contends that it was contrary to law for the trial court to consider a possible out-of-state move as a significant factor in the modification of custody. While Sheila is correct in her assertion that a custodial parent's move out of state is not, per se a substantially changed circumstance as to make that parent's continued custody unreasonable, that is not to say that such a move should not be considered as a factor in making the custody decision. In fact, our Supreme Court has held that such a move may be considered.

"We are not hereby advocating a principle that such a unilateral denial of visitation rights of another, by removal from the jurisdiction of the court, is *ipso facto* a reason for change of custody; and we further affirm the principle that a mere finding that an offending party's disobedience of a court order is contemptuous is not tantamount to a finding of unfitness of such party as affecting his or her right of custody. Such factors are not necessarily determinative of the best interests and welfare of a child; *however, such factors, in conjunction with other facts, may be conclusive of a change of circumstances concerning not only the fitness of*

*the party, but also the best interests and welfare of the child."* (Emphasis added.). *Marshall v. Reeves, supra,* 262 Ind. at 117, 311 N.E.2d at 813.

Justice Prentice, speaking for a unanimous Supreme Court of Indiana, recently stated:

"The change, if its effect upon the child is to be properly assessed, *must be judged in the context of the whole environment.* It is, after all, the effect upon the child that renders the change substantial or inconsequential; and a change that might be regarded as slight or inconsequential in one case might be catastrophic in another. The trial judge, therefore, must consider all circumstances, including those previously weighed, in order to determine, in context, the substance of the change giving rise to the review.

\*    \*    \*    \*    \*    \*

"We agree with the Court of Appeals in concluding that a custodial parent's move out of state is not per se a substantial change in circumstances such as to make that parent's continued custody unreasonable. However, in so concluding, it appears to have considered the removal of the boys to Arizona in isolation from the relevant circumstances of their lives. *Whether or not any given change is substantial must be determined in the context of the surrounding circumstances. If, in context it is likely to beget a consequential end result, it must be deemed to be substantial."* (Emphasis added.) *Poret v. Martin* (1982), Ind. 434 N.E.2d 885, at 888 and 890.

It was not error therefore, for the trial court to consider any possible move to New York as a factor in the context of the children's "whole environment."

Sheila asserts that the move to New York was merely a prospective request and was irrelevant. However, it was established that she had already moved her art work, the children's bicycles, and other miscellaneous items to New York. She also admitted telling Dennis the week of July 8, 1981 that she intended to move to New York with the

children within a week. She obviously intended to accomplish this without the court's permission,[1] since no petition to remove the children was filed until August 3, 1981, after the petition for modification and a temporary restraining order had been filed. The move to New York had not been completed, possibly due to the temporary restraining order which prevented it, but it was a definite intention on the part of Sheila and was an issue in the proceedings.

While Sheila now complains that the "prospective" move was irrelevant, she was the one who submitted a great deal of evidence at trial regarding the apartment, school, and neighborhood in New York where she intended to take the children. To now claim that factor as error seems at the least incongruous.[2]

The move to New York appeared to be the latest of several moves made by Sheila since the parties' marriage had been dissolved. Additionally, there was testimony from Dennis that he had visited the area of New York City where Sheila intended to move and found it unsafe. Even though the out-of-state move had not been completed, it was proper for the trial court to consider it as a factor along with all of the other evidence admitted in determining what result was in the best interests of the children.

Sheila's ancillary argument that the visitation provision of the modification is particularly burdensome in that she was ordered to pay all travel expenses, is without merit. She bases the argument on the fact that Dennis's income exceeds hers. However, Dennis now has the complete expense of raising both children, since Sheila was not ordered to pay any child support. If Sheila's move to New York was "prospective" and she does not leave Indiana, then any travel expenses for visitation purposes would be minimal. If she does move to New York to promote her career, as she stated was her purpose for going, then she could reasonably expect an increase in her income. Finally, at trial she stated that if she moved to New York with the children, Dennis's visitation would not be hindered since he would not be paying for their private school and could use that money for visitation expenses, thereby insinuating that Dennis could bear the entire burden of visitation expense. The trial court merely turned the tables.

■ Finally, Sheila alleges that it was contrary to law for the trial court to refuse to consider the racial characteristics and ethnic heritage of the children in awarding custody. Sheila is an American citizen of Japanese decent. She contends that by awarding the children to Dennis, the trial court is denying them access to Japanese culture and pride.[3]

However, this issue first arose during the hearing on Sheila's motion to correct errors. No evidence of race or ethnic heritage or denial of such was presented at the hearing on the modification petition. Being a court of review, we will not consider evidence which was never presented to the trial court. *Zalewski v. Simpson* (1982), Ind. App., 435 N.E.2d 74 *trans. pending*. In essence, Sheila is requesting an advisory opinion from this Court and we cannot comply. *City of Indpls. et al. v. State Tax*

---

1. "Therefore, we hold that even though the decree is silent concerning the question of removing the child from the continuing jurisdiction of the trial court, to give full force and effect to said decree, such removal can only be made with prior judicial sanction, either by agreement of the parties approved by said court, or after due hearing before the court. Consistent with the idea of prior judicial sanction, the court may impose such terms and conditions as it may deem to be adequate and equitable in order to effectuate the provisions thereof. Failure to recognize and approach this problem as we have would be to approve such actions and countenance an unchecked license to flaunt and thwart the continuing jurisdiction of the court in child custody proceedings." *Marshall v. Reeves* (1974), 262 Ind. 107, at 117, 311 N.E.2d 807, at 813.

2. *See City of Indianapolis v. Swanson* (1982), Ind.App., 436 N.E.2d 1179, *trans. pending; City of Hammond, Lake County v. N.I.D. Corp.* (1982), Ind.App., 435 N.E.2d 42, *trans. pending.*

3. This argument escapes our comprehension since the children were in no way denied access to their mother, and her family, but instead, she was given extensive visitation rights.

*Comm'rs et al.* (1974), 261 Ind. 635, 308 N.E.2d 868; *Richardson v. State* (1980), Ind. App., 402 N.E.2d 1012; *City of Mishawaka et al. v. Mohney* (1973), 156 Ind.App. 668, 297 N.E.2d 858.

> "While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did. "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." (Footnote and citations omitted.)

*Brickley v. Brickley* (1965), 247 Ind. 201, at 204, 210 N.E.2d 850, at 852.

Sheila has demonstrated no reversible error and therefore, the judgment of the trial court is affirmed.

Affirmed.

GARRARD, J., concurs.

STATON, J., concurs in result.