In re the MARRIAGE OF Colleen Marie BAYS (Sullivan), Appellant (Petitioner Below),

v.

Jeffrey Neil BAYS, Appellee (Respondent Below).

No. 4–185A9.

Court of Appeals of Indiana, Fourth District.

Feb. 20, 1986.

Rehearing Denied April 24, 1986.

David P. Murphy, Wolf Robak & Murphy, Greenfield, for appellant.

Patrick Biggs, New Albany, for appellee.

MILLER, Judge.

Colleen Marie Bays Sullivan appeals from the trial court's denial of her petition to set aside a default judgment. The judgment changed custody of Colleen's eight year old son from Colleen to the boy's father Jeffrey Neil Bays on the basis that Colleen's attempts to frustrate Jeffrey's visitation rights constituted a substantial change in circumstances. She raises the following issues:

1. Did the trial court err in refusing to set aside the default judgment?

2. Did the trial court err by ordering the change of custody as a means of punishment for Colleen's alleged violations of the visitation order?

3. Did the trial court err by considering findings and orders made at earlier hearings?

We affirm.

## FACTS

The facts most favorable to the judgment below are as follows. Jeffrey and Colleen Bays were divorced in Harrison Circuit Court on January 15, 1979. Colleen was granted custody of the parties' only child Michael and Jeffrey was granted reasonable visitation. Following the divorce Colleen lived in Clarksville, Indiana; Louisville, Kentucky; Shelbyville, Kentucky; Hendersonville, Kentucky; Beaumont, Texas; Lumberton, Texas; and Pasadena, Texas where she was residing at the time of the hearing on her motion to set aside the default judgment. During this period Jeffrey resided in Louisville, Kentucky.

Soon after the divorce difficulties arose between the parties. Jeffrey alleged that Colleen denied him visitation and filed a rule to show cause why Colleen should not be held in contempt. Colleen contended Jeffrey was behind in child support. A hearing was held on April 1, 1980 at which the dissolution decree was modified so that visitation was set at one week per month, and also that Jeffrey's support arrearage of $550.00 should not be enforced due to Colleen's misconduct in not letting him see Michael.

The parties were back in court on October 20, 1980 when Jeffrey filed a rule to show cause why Colleen should not be held in contempt for refusing to allow him to visit Michael. The court took the matter under advisement and ordered Colleen to keep Jeffrey informed of her address.

In January 1981 Colleen went before a grand jury in Kentucky and obtained an indictment against Jeffrey on a charge of failing to pay child support. She then called Jeffrey's mother to inform Jeffrey that he could visit his son and when he arrived she had police waiting at her house to arrest him. Jeffrey was released from incarceration after he paid the arrearage. On February 9, 1981, Jeffrey again filed a rule to show cause why Colleen should not be held in contempt and a motion to change custody of Michael to him. Notice of hearing was sent by certified mail to Colleen's last known address in Smith Grove, Kentucky. The letter was never claimed and Colleen failed to appear at the hearing on February 20, 1981. The court entered an order finding Colleen in contempt, based on the evidence heard on October 20, 1980, and ordered her to serve 10 days in jail for failure to appear. The court further suspended all support payments as of that date and continued the cause until Colleen could be taken into custody.

Subsequently, Jeffrey attempted to locate Colleen. He traced her through her then husband, James Glass, to Statesville, North Carolina but was unable to locate her or Michael. He called the residence of Doris Paul, Colleen's mother, four times in 1980, six times in 1981, and once in 1982 in an attempt to locate Michael. Sometimes he talked to Mrs. Paul and sometimes to her husband Robert. Each time he was told they did not know where Colleen was living. Mr. Paul testified that he may have told Jeffrey he did not know where Colleen was when in fact he did know. Mrs. Paul testified that once she did find out about Michael's whereabouts she made no attempt to let Jeffrey have this information although she knew he was still looking for Michael. Throughout 1981–1984, Jeffrey continued to search for Michael by hiring attorneys and private investigators and enlisted the aid of Child Find, Inc.

On May 6, 1983, Jeffrey filed another petition for modification of the divorce decree, alleging that there had been a continuing and substantial change in circumstances since the decree was granted in that his visitation rights were cut off since January 1981, and that a change of custody was in the best interest of the child. Along

with this motion Jeffrey filed a praecipe for service by publication and an affidavit by his attorney that with reasonable inquiry and a diligent search Colleen's whereabouts had not been discovered. Notice was published in a weekly newspaper in Harrison County and a hearing was held on June 28, 1983. The court order indicates Jeffrey appeared and testified, but there is no record of his testimony. He also introduced into evidence a letter from a private investigator which chronicled the investigator's attempts to find Michael. After the hearing, the court transferred custody of Michael to Jeffrey.

An investigator hired by Jeffrey subsequently located Colleen and Michael in Texas. Colleen was arrested on January 27, 1984, in Hardin County, Texas, and surrendered custody of Michael to Jeffrey at that time. Colleen then returned to Indiana to file a verified motion to set aside the default judgment alleging she had no notice of the May 6, 1983 hearing and the court's order was contrary to law. The court denied Colleen's motion on September 26, 1984.

### DECISION

■ Colleen's first contention is that the trial court erred in failing to grant her petition to set aside the default judgment. She claims she is entitled to relief pursuant to Ind. Rules of Procedure, Trail Rule 60(B)(2), (3), and (4) which read as follows:

"(B) Mistake-Excusable neglect-Newly discovered evidence-Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

\* \* \* \* \* \*

(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings;"

Colleen's argument on this issue is twofold, first she argues she did not receive proper notice and the trial judge should have set aside the default judgment on that basis, and second she argues that even if notice was proper she is entitled to relief under T.R. 60(B)(4).

On the issue of notice Jeffrey appeared and filed an affidavit stating that a diligent search had been made but he had been unable to locate Colleen. The trial court granted his request for notice by publication and notice was published in a county newspaper.

Notice by publication is governed by Ind. Rules of Procedure, Trial Rule 4.13 which reads in pertinent part as follows:

"Rule 4.13 Summons: Service by publication

(A) Praecipe for summons by publication. In any action where notice by publication is permitted by these rules or by statute, service may be made by publication. Summons by publication may name all the persons to be served, and separate publications with respect to each party shall not be required. The person seeking such service, or his attorney, shall submit his request therefor upon the praecipe for summons along with supporting affidavits that diligent search has been made that the defendant cannot be found, has concealed his whereabouts, or has left the state, and shall prepare the contents of the summons to be published. The summons shall be signed by the clerk of the court or the sheriff in such manner as to indicate that it is made by his authority.

\* \* \* \* \* \*

(C) Publication of summons. The summons shall be published three (3) times by the clerk or person making it, the first publication promptly and each two (2) succeeding publications at least seven (7) and not more than fourteen (14) days after the prior publication, in a newspaper authorized by law to publish notices, and published in the county where the complaint or action is filed, where the res is located, or where the defendant resides or where he was known last to reside. If no newspaper is published in the county, then the summons shall be published in the county in this state nearest thereto in which any such paper may be printed, or in a place specially ordered by the court. The person seeking the service or his attorney may designate any qualified newspaper, and if he fails to do so, the selection may be made by the clerk.

Our Supreme Court spoke to the issue of notice in *Mueller v. Mueller* (1972), 259 Ind. 366, 287 N.E.2d 886. In *Mueller* the facts were somewhat similar to the case at bar in that a father seeking custody of his children served the mother by publication alleging he was unable to locate her because she had left Indiana and was concealing her whereabouts. The *Mueller* court stated:

"notice required will vary with circumstances and conditions. We recognized that in some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown."

*Mueller*, 259 Ind. at 371, 287 N.E.2d at 889, *quoting, Walker v. City of Hutchinson* (1956), 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178. The court further stated:

"Thus, it can be seen that notice should be such as is reasonably calculated to inform defendant of the pending proceedings. In making this determination we must decide whether the best method possible has been utilized. A certain method is sufficient if no other method better calculated to give notice is available but is insufficient if another method

obviously better calculated to give notice is available."

*Mueller*, 259 Ind. at 371, 287 N.E.2d at 889. The *Mueller* court concluded that notice by publication was proper in that case because the father had first attempted to personally serve the wife, and second, had sent a summons to the mother's parents which had been returned with a letter stating the mother had left the state and no forwarding address was available. After these efforts were unsuccessful the father filed an affidavit stating he had made a diligent search but had been unable to locate the children's mother.

The facts of this case, while not exactly like those in *Mueller*, are equally compelling. Jeffrey filed an affidavit stating that despite reasonable inquiry and diligent search he had been unable to locate Colleen. There is no evidence in the record to indicate that this was not in fact true. On the contrary, the evidence showed that Colleen left Smith Grove, Kentucky for Statesville, North Carolina without telling Jeffrey in violation of a court order. Jeffrey expended attorney fees and money for private detectives in a three-year search for his son Michael. He called Colleen's mother, Doris Paul in 1981 and 1982 and was told she did not know Colleen's whereabouts. These facts indicate reasonable inquiry and a diligent search and Jeffrey was justified in publishing notice "in the county where the complaint or action is filed." T.R. 4.13.

Colleen argues Jeffrey should have subpeoned Doris Paul who did in fact know Colleen's whereabouts and taken her deposition. Colleen further asserts that while Doris and her husband may not have been truthful with Jeffrey previously they would not have lied under oath.

We find these arguments speculative and self-serving. Jeffrey had expended a great amount of time and energy in an effort to locate Colleen. He had attempted to locate her through the Pauls but was told they had no knowledge of her whereabouts. Colleen speculates that further attempts to locate her through her mother would have

been successful. We do not think this a certainty and cannot classify Colleen's suggestion as "another method obviously calculated to give notice." *Mueller, supra.* Under the circumstances in this case Jeffrey had no choice but to serve Colleen by publication. His notice was published in the county where the action was filed and was proper.

Colleen's second argument is that she is entitled to relief under T.R. 60(B)(4). Jeffrey does not contest that Colleen meets the literal wording of T.R. 60(B)(4) which requires only that a party without *actual* notice be served by publication. However, in addition to the above, the courts have imposed the requirement that movants under T.R. 60(B)(4) present a prima facie meritorious defense. *Plough v. Farmers State Bank* (1982), Ind.App., 437 N.E.2d 471. In proceedings under T.R. 60(B) the moving party bears the burden of proof. *Plough, supra; In Re Marriage of Jones* (1979), 180 Ind.App. 496, 389 N.E.2d 338. Although default judgments are not favored, the decision to grant relief under T.R. 60(B) is left to the equitable discretion of the court. *Plough, supra.* An appellate court does not reweigh the evidence, and will reverse only for abuse of discretion, *Plough, supra; Jones, supra.* In *Hoag v. Jeffers* (1928) 201 Ind. 249, 159 N.E. 753, our supreme court stated:

> "It is not the duty nor privilege of this court to weigh the evidence in such cases as the one at bar, any more than it will weigh evidence in other appeal cases.
>
> It is the function of the trial court to decide the question whether or not the default judgment in the particular case must be set aside, which action requires it to determine the sufficiency of the evidence which bears upon the question of the mistake, inadvertence, surprise or excusable neglect of the plaintiff." (citations omitted)

*Id.,* 201 Ind. at 253, 159 N.E. at 754.

In the case at bar, Colleen contends she has presented a prima facie meritorious defense and the trial court's refusal to set aside the default judgment is contrary to law. A decision is contrary to law only if the evidence and all reasonable inferences therefrom lead to only one conclusion and the trial court has reached a different conclusion. *Plough, supra.* After examining the evidence at the hearing to set aside the default judgment, we cannot say the trial court abused its discretion in denying Colleen's petition.

A party petitioning for modification of a dissolution decree must show that such substantial change has occurred that it is no longer in the best interest of the child to maintain the status quo. *In Re Marriage of Davis* (1982), Ind.App., 441 N.E.2d 719. The general principle is that the child must be affected by the change in conditions of custody in order to justify the modification of the terms thereof. *Poret v. Martin* (1982) Ind., 434 N.E.2d 885. In the case at bar, Jeffrey introduced evidence that Colleen had left the state without informing him of her whereabouts, deliberately frustrating his visitation rights. Courts in our state have held that unilateral denial or frustration of visitation rights is not *per se* a substantially changed circumstance as to make that parent's continued custody unreasonable. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885; *Lubeznik v. Liddy* (1985), Ind.App., 477 N.E.2d 947; *In Re Marriage of Davis* (1982), Ind.App., 441 N.E.2d 719. The trial judge however is accorded a great amount of discretion in determining whether continued custody is unreasonable.[1] The denial or frustration of visitation must be examined within the total content of best interest of the child. *Poret, supra, Marshall v. Reeves,* (1974) 262 Ind. 107, 311 N.E.2d 807.

Along these lines, our supreme court has stated:

> "... (T)he welfare of a child not only requires that he be supported; a child

---

[1]. Cases dealing with the question of whether denial of visitation constitutes a substantial change in circumstances have consistently affirmed the trial court's decision. *See, Poret, supra; Marshall, supra; Lubeznik, supra; In Re Marriage of Davis, supra.*

also needs the affection and companionship of both its parents insofar as their unnatural position makes this possible.... Furthermore, in this case, both parents, whether it be the mother charged with the responsibility of the care and custody or the father charged with the financial support of the child, are thereby as a matter of equity and fair dealing entitled to share in the affection and companionship of the child as circumstances permit. These considerations are inseparably related to the welfare of the child and the reciprocal equities between the parents."

*State of Indiana ex rel. Summa v. Starke County Circuit Court* (1958), 238 Ind. 204, 149 N.E.2d 541, 543–4.

Similarly, in *Chance v. Chance* (1980), Ind.App., 400 N.E.2d 1207, the court stated: "... (A)dequate companionship by a non-custodial parent with his children is inherently beneficial to those children and in their best interests." *Id.* at 1211.

■ The case at bar is made especially difficult because custody was changed by default judgment after an evidentiary hearing. Jeffrey appeared and testified that Colleen had denied him visitation. He was obviously unable to provide the court with any other information about Michael's immediate situation because he had no knowledge of Colleen or Michael's whereabouts. Thus, the trial judge was placed in the unenviable position of trying to determine the best interest of a child who is unaccounted for. Under these circumstances, we cannot say the trial court abused its discretion in changing custody from Colleen to Jeffrey. There was no evidence that Jeffrey was an unfit parent, and Colleen had certainly committed a grave violation in denying Jeffrey visitation for nearly three years.

At the T.R. 60(B) hearing, Colleen could have presented a meritorious defense by showing that other factors existed that made a change in custody not in Michael's best interest *despite* her denial of visitation. *See, Lubeznik, supra.* She appeared and testified but her testimony may be summarized as follows:

She admitted she did not keep Jeffrey or the court informed of her address, but contended Jeffrey was not interested in visiting the child. She also testified that she had trouble getting support payments from Jeffrey, and that one of the reasons she moved to Texas was because of Michael's asthma.

We think that based on this evidence, the trial judge was within his discretion in finding Colleen had not presented a meritorious defense. Colleen's testimony while favorable to her position is not of such a decisive nature that it would disallow a change in custody. There was no evidence before the court that Jeffrey was lacking in any area or that he was an unfit parent. The trial court had before it, two fit parents one of whom was denying visitation rights to the other. In addition, because of Colleen's blatant disregard for the court's orders in the past, the judge could have drawn a reasonable inference of lack of her cooperation in the future. Based on the evidence the trial court concluded the situation at hand was not in the best interest of the child and changed custody. Colleen presented no decisive contrary evidence at the hearing and the court was within its discretion in denying her petition to set aside the default judgment.

■ Colleen next contends the trial judge changed custody of Michael to Jeffrey as a means of punishing her for her violations of the visitation order. As evidence of this Colleen cites portions of the trial transcript during which the trial judge referred to the arrest warrant issued on Colleen. Our examination of these statements leads us to conclude that the judge's remarks do not indicate any prejudice toward Colleen. They are statements by the judge indicating that Colleen should have known she was violating previous court orders. There is no indication however that the trial judge based the change of custody on anything other than the best interest of the child.

Colleen's final argument is that the trial court erred in examining its findings and orders from a previous hearing. At the conclusion of the hearing on Colleen's motion to set aside the default judgment the trial judge made the following statement:

"Well, I'm going to take the matter under advisement on what notice Mrs. Bays Sullivan had, and all other issues involved under advisement. I'm directing my Court Reporter to prepare a transcript of the findings and Orders of the Court made at the conclusion of the last hearing I had at which Mrs. Bays Sullivan was present because I know that there were direct findings and orders given to her at that time that did not wind up in a formal order entry, and I wanted to see what they are to see if my memory of them is in fact accurate." (Tr. p. 312).

Colleen argues the trial judge improperly considered evidence from earlier hearings. Our examination of the judge's remarks indicates the judge was merely asking for verification of earlier findings and orders. A court may take judicial notice of its records made in the same case and the facts which they establish. *Apple v. Greenfield Banking Company* (1971), 255 Ind. 602, 266 N.E.2d 13; *Graves v. Kelly* (1916), 62 Ind.App. 164, 112 N.E. 899. If the trial judge was seeking verification of the orders given to Colleen at earlier proceedings in this case, this may very well bear on the issue of whether she had a meritorious defense to denying visitation to Jeffrey. We do not find the trial court's actions improper.

We hold 1) notice by publication was proper, 2) the trial court was within its discretion in finding Colleen had not presented a meritorious defense; 3) there is no evidence indicating the trial court changed custody simply to punish Colleen for her actions; and 4) the trial judge did not err in considering earlier findings and orders in the same case.

Finally, nothing in this opinion should be deemed to deny Colleen the right, in the future, to file her own motion for change of custody.

Judgment of the trial court is affirmed.

YOUNG, P.J., and CONOVER, J., concur.