**Terry Lee WADDELL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 93–CA–2058–MR.

Court of Appeals of Kentucky.

Feb. 24, 1995.

Jeffrey A. Reed, Huddleston and Flener, Bowling Green, for appellant.

Chris Gorman, Atty. Gen., Cindy A. Gold-hill, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

Before LESTER, C.J., and GARDNER and McDONALD, JJ.

McDONALD, Judge.

On July 13, 1993, the appellant, Terry L. Waddell, entered a conditional plea of guilty to the charge of Flagrant Nonsupport, KRS 530.050, a class "D" felony. The plea was specifically conditioned on Waddell's right to appeal the trial court's denial of his motion to dismiss the indictment. Waddell was sentenced to a term of five years, all of which was probated and he was fined $10, plus costs, for a total of $65. An order of wage assignment was entered requiring the withholding of $30 per week, $10 of which was to be applied toward the arrearage of over $16,-000 in unpaid child support.

The sole basis offered to the trial court as requiring the dismissal of the indictment was that the judgment entered against the appellant in the original paternity action was void for lack of personal jurisdiction over the appellant. In addition to repeating that argument in this appeal, Waddell also contends the Commonwealth failed to prove an essential element of KRS 530.050, specifically that he knew he had a "duty to provide [support] by virtue of a court or administrative order." He also contends that KRS 530.050 is unconstitutional as it violates Section 18 of our Kentucky Constitution.

The facts leading to Waddell's indictment are not complex. In 1975 the mother of a child born out-of-wedlock filed a petition to establish paternity of her child in the Porter Juvenile Court in Valparaiso, Indiana. Waddell was named as the respondent/father. A summons was issued to Waddell in care of his mother who resided in East Gary, Indiana. It was returned with the notation, "not found—Terry Waddell's mother Mrs. Cornett stated he moved out, 6 mos Ago—Last heard from him somewhere in Calif." On December 15, 1975, the petitioner/mother filed a praecipe for service by publication and

the affidavit of her attorney, Robert M. Bly, concerning the efforts to locate and serve Waddell, portions of which read:

1. That on August 6, 1975, Petitioner filed a Petition for determination of paternity of minor child, Cathy Jo Havlin and requested personal service.

2. That Respondent, Terry Lee Waddell, at that time was reputed to live with his mother, Mrs. Johnnie Cornett, 3301 Minnesota Street, East Gary, Indiana.

3. That the summons was directed at the aforementioned address, but was returned "not found".

4. That diligent search has been made for the respondent, Terry Lee Waddell and the Respondent has been reported living in a motel in Corbin, Kentucky, and most recently in California.

5. That it is clear that the Respondent now no longer lives within the State of Indiana, or if he does has effectively concealed his whereabouts so as to render ineffective any type of personal service.

6. That it is the belief of your affiant that the only way effective service can be had on the Respondent is by publication.

The motion of the mother was granted and notice of the paternity action was published on three successive weeks in accordance with the Indiana Rules of Trial Procedure, Rule 4.13.[1] Waddell did not answer the petition, and proof was ultimately heard in his absence. On March 18, 1976, an order was entered by default finding Waddell to be the father of Cathy Jo Havlin and ordering him to pay the sum of $20 per week and the medical expenses incurred in the child's birth. It is this order that Waddell insists is void and not entitled to full faith and credit by our courts.

In 1978 the child's mother petitioned the court for a citation of contempt. Her affidavit alleged Waddell had an arrearage of $3,000. A citation for contempt was issued by the Porter Superior Court which was personally served on Waddell at his mother's house. The summons notified Waddell of the hearing set for March 8, 1978. Not surpris-

---

1. Rule 4.13(C) allows for publication "in the county where the complaint or action is filed, where the res is located, or where the defendant resides or where he was known last to reside."

ingly, Waddell did not appear. A bench warrant was issued for his arrest on March 8, 1978, but was not served before it expired. In 1983 Waddell voluntarily made some payments of $20 and $30 and the State of Indiana was successful in intercepting his income tax returns. He also made voluntary payments totaling $210 in 1990.

In 1989 the State of Indiana learned that Waddell was residing in Covington, Kentucky. Appropriate requests and documentation were sent to the Cabinet for Human Resources seeking enforcement of the Indiana support order pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA).

A warrant was issued for Waddell's arrest on August 7, 1991. At that time Waddell had not paid any support for over a year and had an arrearage in excess of $13,000. The warrant was served June 1, 1992. Waddell was released upon payment of bond in the amount of $2,500. The charge was referred to the grand jury which returned its indictment on December 4, 1992. A pretrial hearing was conducted on May 17, 1993, at which time the court overruled Waddell's motion to dismiss. The trial court suggested that Waddell attack the validity of the Indiana judgment in Indiana and set the trial date far enough away to give Waddell the opportunity to take that action. If Waddell did attempt to get relief from the 1976 judgment in that forum, such is not indicated in the record. Ultimately, Waddell entered his plea acknowledging his guilt and retaining the right to appeal the court's ruling on his motion to dismiss.

 The United States Constitution requires our courts to give full faith and credit to the judgments of the courts of all our sister states. U.S. Const., Art. 4, § 1. A foreign judgment is presumptively valid and the party attacking it has the burden to demonstrate its invalidity. *Dant v. Progress Paint Manufacturing Company*, Ky., 309 S.W.2d 187 (1958). To this end Waddell insists that the 1976 Indiana judgment is void due to insufficiency of service of process, and not entitled to full faith and credit. To succeed in this collateral attack, Waddell must show that the judgment is void under Indiana law. Thus, his discussion regarding our CR 4.05–4.07 and the procedure outlined therein for a warning order are completely irrelevant.

 Clearly, Indiana allows for service by publication when "the person to be served cannot be served personally and cannot be found, has concealed his whereabouts, or has left the state." *Smith v. Tisdal*, 484 N.E.2d 42, 43–44 (Ind.App.1985); Ind.Rules of Procedure, Trial Rules 4.5; 4.9(B)(3).[2] While Indiana recognizes that notice by publication is "generally ... not a proper means of service in actions in personam," *id.*, it nevertheless permits notice by publication to substitute for personal service or mail under circumstances where it is not practical or possible to give more adequate notice. Note 2 *infra; see also, Milosavljevic v. Brooks*, 55 F.R.D. 543 (N.D.Ind.1972); *Bays v. Bays*, 489 N.E.2d 555 (Ind.App.1986); *Mueller v. Mueller*, 259 Ind. 366, 287 N.E.2d 886 (1972).

Waddell relies on the following passage in *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 658, 94 L.Ed. 865, 874 (1950), for his argument that he has been deprived of due process:

> It would be idle to pretend that publication alone ... is a reliable means of acquainting interested parties of the fact that their rights are before the courts.... Chance alone brings to the attention *of even a local resident* an advertisement in small type inserted in the back pages of a newspaper, *and if he makes his home outside the area of the newspaper's normal circu-*

---

**2.** "Rule 4.5—SUMMONS: SERVICE UPON RESIDENT *WHO CANNOT BE FOUND OR* SERVED WITHIN THE STATE when the person to be served is a resident of this state who cannot be served personally or by agent in this state and either *cannot be found,* has concealed his whereabouts or has left the state, summons may be served in the manner provided by Rule 4.9 (summons in rem actions)."

"Rule 4.9—SUMMONS: IN REM ACTIONS (a) In general. In any action involving a res situated within this state, service may be made as provided in this rule. The court may render a judgment or decree to the extent of its jurisdiction over the res. (b) Manner of service. Service under this rule may be made as follows: ... (3) By service by publication pursuant to Rule 4.13."

*lation* the odds that the information will never reach him are large indeed. (Emphasis added by appellant).

We will not "pretend" that publication is a desirable method of giving the notice required to satisfy due process requirements. However, the appellant would have us pretend there was a viable alternative when the uncontradicted facts fail to demonstrate that Waddell was amenable to any other method of service. The facts in the instant case are remarkably similar to those in both the *Bays* and *Mueller* cases, *supra.* In both, efforts were made to personally serve parties otherwise intent on not being found. In both cases the parents of the absent party denied knowing their child's whereabouts. In both, affidavits similar to the one supporting the praecipe were filed and, in both, service by publication was upheld.

Next in this regard, Waddell asserts that the affidavit used in support of the motion for notice by publication did not contain sufficient facts for a reviewing court to conclude that a diligent search was made to locate him. He refers us to the holding in *Blackgold Exploration Co. v. First Federal Savings & Loan Association of Elk City,* 803 P.2d 1138, 1142 (Okla.1990), which states: "A mere statement that due diligence was used is not sufficient support for the allowance of notice by publication." We find no merit to Waddell's contention as the affidavit was not merely conclusory but indeed did contain several facts to support the petitioner's assertion that Waddell had either fled the jurisdiction or was purposely hiding to avoid process. The *Blackgold* case goes on to state that "[t]here must be factual support for the statement [concerning due diligence], although those facts need not be set forth in the affidavit." *Id.* Compelling evidence to support the use of constructive notice in the instant case was the fact that Waddell's mother did not know where he was but believed him to be "somewhere" in California.

Finally, Waddell fails to allege, much less offer any evidence to show, that any further diligence would have accomplished the actual notice to which he claims to have been entitled. He states in his brief: "It is impossible to determine whether an attempt was made to find [appellant] in California [3] or if process was mailed to his last known address in the hopes that the postal service would forward it to another address." Waddell has never offered any proof of where he could have been found in 1975. He has never disputed the affidavit's conclusion that he could not be found and/or was concealing his whereabouts. He does not state that he did leave a forwarding address with the postal service. In short, the state of the record clearly supports the trial court's order denying Waddell's motion to dismiss. We conclude that the notice provided by publication comported with due process requirements and that Indiana thereby had personal jurisdiction over Waddell.

Likewise without merit is Waddell's argument that there was insufficient evidence to support his guilty plea. Specifically, Waddell argues there is no evidence he knew he had a duty to pay child support "by virtue of a court or administrative order." KRS 530.050. We agree with the Commonwealth that Waddell waived any infirmity in the Commonwealth's proof by his plea of guilty. The plea was conditional but was conditioned only upon the right to appeal from the trial court's ruling in the jurisdictional issue. In any event, the record is replete with evidence that Waddell had actual notice of the 1976 judgment at least as early as 1978.

Finally, Waddell claims that KRS 530.050 is unconstitutional, an issue he admits was not raised in the trial court. Waddell argues that KRS 530.050 offends Section 18 of the Kentucky Constitution which prohibits imprisonment of one for a debt. The obvious response to this argument is that the

---

3. We take judicial notice of the fact that California is a large state both in terms of area and population and that the original petitioner, a welfare recipient, would not have the financial resources to scour the entire state in search of the transient appellant.

crime does not seek to impose a punishment for a debt, but as the Commonwealth aptly points out, to redress the intentional financial abandonment of one's legal responsibilities.

Accordingly, the judgment of the Kenton Circuit Court is affirmed.

All concur.