**Juan RAMIREZ, Appellant,**

v.

**COMMONWEALTH of Kentucky, ex rel. Michelle L. BROOKS, Mother of Christopher M. Brooks, Appellee.**

No. 1999–CA–000382–DG.

Court of Appeals of Kentucky.

Nov. 17, 2000.

Discretionary Review Denied
June 7, 2001.

---

James M. Morris, Sharon K. Morris, Jason V. Reed, Lexington, for appellant.

Byron L. Ockerman, Robyn M. Shier, Lexington, for Appellee.

Before BARBER, JOHNSON and SCHRODER, Judges.

## OPINION

JOHNSON, Judge:

This Court has previously granted discretionary review of an opinion and order entered by the Fayette Circuit Court on January 13, 1999, which affirmed the Fayette District Court's award of retroactive child support in a paternity action. Pursuant to this Court's April 14, 1999 order, the sole issue on appeal is whether the circuit court properly construed the four-year limitations period in KRS[1] 406.031 in affirming the retroactive award of child support in view of the manner and time frame in which service of process was effectuated on the appellant, Juan Ramirez. Finding no error, we affirm.

Ramirez and Michelle Brooks had a brief intimate relationship in the fall of 1989. They met at Keeneland Race Track in Lexington, Kentucky where they worked for different horse trainers. In the late fall, they traveled to Florida where in December, Brooks became pregnant. In January 1990, Brooks informed Ramirez of her condition and the relationship ended. Brooks returned to Kentucky where she gave birth to Christopher Brooks on September 12, 1990. Brooks testified that she and her mother saw Ramirez near Keeneland in October 1990, and approached him and showed him his child. She did not see nor hear from Ramirez after that, or ever receive any support from him. In the proceeding in the district court, Ramirez acknowledged that Brooks informed him of her pregnancy, although he denied that he saw the child after his birth. Ramirez also testified that he left Kentucky in October 1990, and did not return after that.

Brooks applied for, and received, medical assistance and Aid to Families with Dependent Children (AFDC) from the Cabinet for Human Resources. The Cabinet, on behalf of Brooks and her child, commenced an action in the Fayette District Court on December 12, 1990, to establish the paternity of Christopher, to set a reasonable amount of child support, and to obtain reimbursement for medical and public assistance which the Cabinet had provided for their support. The complaint named "Juan Ramirez Cortez" as the father of Christopher. The only address Brooks had for Ramirez was Keeneland. Service of process was attempted on Ramirez but the constable was unable to find Ramirez and the unserved complaint was returned in May 1991. In 1993, Brooks learned that Ramirez was working at a race track in Maryland; and the case was referred to the State Parent Locator Service in March of that year, but Ramirez was not located until May 1997. At that time the Cabinet amended the complaint to reflect the fact that Ramirez was living out of state. He was finally served with the summons and the complaint that was sent by certified mail from the Office of the Secretary of State on May 22, 1997, to his residence in Maryland.

After its receipt, Ramirez answered the complaint, denied that he was the father of Christopher, and asked that blood tests be performed. An agreed order for blood testing was entered on July 8, 1997. After receiving the results of the tests which indicated that there was a 99.67% probability that Ramirez was the father of Christopher, the Commonwealth moved for summary judgment on the issue of paternity and for an order of support. A hearing was conducted on the motion on February 11, 1998, at which time Ramirez, through counsel, agreed to acknowledge paternity and agreed to pay support in the amount of $58 per week; however, Ramirez object-

---

1. Kentucky Revised Statutes.

ed to the Commonwealth's request that he be held responsible for any retroactive payments of support. Nevertheless, in its order of April 16, 1998, the district court made the support order retroactive to January 1991, one month following the commencement of the action.

In his motion to alter, amend or vacate the judgment, Ramirez argued that the district court had "imposed an unjust financial burden" upon him, that its judgment "destroyed the equitable purpose behind the 4–year limitation incorporated in [KRS 406.031]," and that he had no "reason to believe that his child support obligation was accruing for the last seven years." On May 27, 1998, a hearing was conducted on the motion at which time testimony was elicited from both Brooks and Ramirez. On July 21, 1998, the trial court denied the motion to alter its judgment, but provided that Ramirez could pay the arrearage created by its earlier support order at the rate of $10 per week.

In his appeal to the Fayette Circuit Court, Ramirez, argued that the retroactive support award was inappropriate as the state had not been diligent in its attempt to serve him with notice of the complaint. For the first time, Ramirez also argued that the district court did not have personal jurisdiction over him since KRS 454.210(2), Kentucky's long-arm jurisdiction statute, authorizes jurisdiction over out-of-state residents for claims relating to paternity only if the sexual intercourse resulting in conception of the child occurs in this state. Because Christopher was conceived in Florida, a fact Ramirez insisted he learned for the first time at the May 1998 hearing in district court, he ar-

gued that there was no statutory authority for service upon him by the Secretary of State.

In its review, the Fayette Circuit Court concluded that the "chain of events manifestly demonstrates a complaint was filed, a summons was issued, and a good faith attempt was made to serve [Ramirez] pursuant to CR[2] 3," and that the district court's award of retroactive child support "was proper, as this action was commenced within the four year statutory mandate of KRS 406.031." The circuit court, citing *Williams v. Indiana Refrigerator Lines*,[3] also held that Ramirez had waived any defenses to personal jurisdiction "when he appeared generally to defend this action on its merits."

As the sole issue before this Court, Ramirez argues that the trial court abused its discretion in awarding Brooks over $22,000 in retroactive child support since he was not served until after the expiration of the four-year limitations period provided for in KRS 406.031(1). This statute reads as follows:

> The determination of paternity under the provisions of KRS 406.021(1) shall be commenced within eighteen (18) years after the birth, miscarriage or stillbirth of a child. However, in such cases, liability for child support shall not predate the initiation of action taken to determine paternity as set forth in KRS 406.021 if the action is taken four (4) years or more from the date of birth.

Ramirez correctly states that this statute, enacted in 1986, was intended to "codif[y] the common law doctrine of laches."[4]

---

2. Kentucky Rules of Civil Procedure.

3. Ky.App., 612 S.W.2d 350 (1981).

4. *Wigginton v. Commonwealth ex rel. Caldwell*, Ky.App., 760 S.W.2d 885, 887 (1988)

(trial court's refusal to apply statute in paternity action filed in 1984 upheld although father was allowed to assert laches as a defense to bar award for retroactive support for the 15 years pre-dating the commencement of the action).

Clearly, there is no question, as Ramirez states in his brief, that this statute places "a burden upon the Cabinet and upon unwed mothers to actively pursue their rights in a timely manner or lose their right to do so." However, Ramirez' argument fails to recognize that the Cabinet, on Brooks' behalf, filed a complaint within the statutory period, indeed, within three months of Christopher's birth. The record further supports the circuit court's observation that the appellees attempted to have the complaint, and the accompanying summons, served on Ramirez at the time the complaint was filed at his address at Keeneland where he resided during the parties' relationship and near where Brooks had last seen him the previous October. After the spring meet in 1991, the summons was returned with the note that Ramirez could not be found. From our review of the record, it is clear that the circuit court did not err in concluding that the appellees did all that they were required to do to toll the statute of limitations.[5] "CR 3[6] measures commencement from the date of the filing of the complaint and the issuance of a summons in good faith."[7] This is not a case where the plaintiff, or her counsel, deliberately stalled the commencement of the action, and thereby failed to stop the running of the statutory period. The cases relied upon by Ramirez, *Louisville & N.R. Co. v. Little*,[8] and *Gibson v. EPI Corp.*,[9] are simply not applicable under the circumstances presented in the case *sub judice*, and we are persuaded that the circuit court correctly concluded that the filing of the complaint and the issuance of the summons were sufficient to commence the action.

■ Ramirez further argues that even if the action were initially commenced in good faith, the limitations period should not be tolled as Brooks and the Cabinet did not diligently attempt to have him served after the initial return of service. Ramirez suggests that the appellees did not use all the resources available to them to locate him. Since Brooks was a recipient of public assistance, we cannot imagine what resources she would have had at her disposal to look for Ramirez, nor does Ramirez suggest how Brooks was supposed to find him.[10] Brooks testified that she knew, and visited, Ramirez's brother and sister-in-law who lived in the Lexington area. However, she also testified that they would not give her any information about Ramirez's whereabouts. Ramirez testified that until he received notice of the paternity action he was unaware that Brooks maintained contact with his family; but, he confirmed that his family had not

---

**5.** *See Allen v. O.K. Mobile Home Sales, Inc.,* Ky.App., 570 S.W.2d 660, 662 (1978)(citing *Blue Grass Mining Co. v. Stamper,* 267 Ky. 643, 645, 103 S.W.2d 112, 113 (1937) ("[w]hen a party has caused the summons to issue in good faith, he has complied with the law and saved his right of action in respect of time . . .")).

**6.** "A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith."

**7.** *Jones v. Baptist Healthcare System, Inc.,* Ky. App., 964 S.W.2d 805, 807 (1997).

**8.** 264 Ky. 579, 95 S.W.2d 253 (1936) (summons was prepared but retained by plaintiff's attorney until after the running of the statute of limitations).

**9.** Ky.App., 940 S.W.2d 912 (1997) (summons held by plaintiff's attorney until expiration of limitations period).

**10.** *See Waddell v. Commonwealth,* Ky.App., 893 S.W.2d 376, 380 (1995) (father, served by publication, held not entitled to relief from judgment of paternity due to insufficiency of service of process where "the uncontradicted facts fail to demonstrate that [he] was amenable to any other method of service").

informed Brooks of his address for fear that a paternity action might disrupt his marriage. Ramirez, an itinerant worker who apparently did not want to be found, was not successful in convincing either of the courts below that further efforts to locate him would have been fruitful. Thus, under these circumstances, we find no error in the district court's finding that the Cabinet made a reasonable effort under the circumstances to locate and serve Ramirez.

 Next, Ramirez contends that the complaint filed by the Cabinet and the summons it caused to be issued in December 1990, did not satisfy the requirements for commencing an action and tolling the limitations period with respect to him since he was misnamed in the complaint. Indeed, the complaint named, and the summons was issued to, "Juan Ramirez Cortez," instead of "Juan Ramirez." Again, we agree with the Commonwealth that there was no error in the lower courts' ruling with respect to the variance in the name on the pleadings and the appellant's actual name. Ramirez was identified as "Juan Ramirez Cortez" because Brooks identified him in that manner in her application for public assistance. While the record does not reveal why Brooks did not know Ramirez's actual name, there was no evidence from which the trial court could find, or infer, that Brooks was acting in bad faith in her identification of Ramirez, or intended thereby to prevent his receipt

of process. Further, as the district court found, there may have been a logical reason for her confusion.[11] In any event, the circuit court correctly determined that any error was waived.

> Though a defendant be misnamed in a suit, if he is properly served with process and does not plead the misnomer he is bound by the judgment. However, it is essential that the service should have been on the intended defendant; the case must be one of misnomer and not mistaken identity.[12]

It is obvious from the record that Ramirez was, at all times, the intended defendant and that the circumstances do not reflect this to be a case of mistaken identity. We agree with the circuit court's observation that "[i]t is ridiculous to say this judgment is void against [Ramirez] due to an error in syntax, after he has voluntarily participated in the action."

 Finally, Ramirez continues to argue that the complaint should have been dismissed for lack of personal jurisdiction. Because Christopher was conceived in Florida, Ramirez could have asserted a jurisdictional defense.[13] However, the circuit court's resolution of the issue of lack of personal jurisdiction was not an issue designated in this Court's previous order as one to be reviewed. In any event, the issue was, as the Fayette Circuit Court correctly concluded, waived by the failure of Ramirez to raise it timely.[14]

11. Ramirez testified that his maternal grandfather's last name was "Cortez."

12. *Mulligan v. First National Bank & Trust Co. of Lexington,* Ky., 351 S.W.2d 59, 61 (1961). *See also, Dixon v. Melton,* 137 Ky. 689, 126 S.W. 358 (1910).

13. *See* KRS 454.210(2)(a)(8) and *Davis–Johnson ex rel. Davis v. Parmelee,* Ky.App., 18 S.W.3d 347 (1999) (long-arm statute can be used to obtain personal jurisdiction over a

non-resident putative father if the sexual intercourse which resulted in the child occurred in this jurisdiction).

14. Ramirez justified his failure to timely raise the issue by asserting that it was not until the hearing conducted on May 17, 1998, that he learned where the child was conceived. We find this argument to be spurious as Ramirez was uniquely qualified to know when and where the child was conceived, or, he could easily have counted backwards from the birth

Accordingly, the opinion of the Fayette Circuit Court is affirmed.

ALL CONCUR.

date of the child contained in the complaint to determine where he was nine months prior to the birth. In any event, since intercourse occurred between the parties in both jurisdic-tions, Ramirez should have been aware of the potential jurisdictional defense prior to his response and participation in the case on the merits.