David MUNSTER, Appellant–Plaintiff,

v.

Joe GROCE and Business World, Inc., Appellees–Defendants.

No. 18A02–0409–CV–738.

Court of Appeals of Indiana.

June 8, 2005.

54

Thomas D. Blackburn, Blackburn &amp; Green, Fort Wayne, Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bing-

ham McHale, LLP, Indianapolis, for Appellant.

Michael D. Conner, Spitzer Herriman Stephenson, Holderead Musser & Conner, LLP, Marion, for Appellees.

## OPINION

BARNES, J.

### Case Summary

David Munster appeals the dismissal of his complaint against Joe Groce and Business World, Inc. ("BWI"). We affirm in part, reverse in part, and remand.

### Issues

The restated issues before us are:

I. whether Munster properly effected service of process on Groce; and

II. whether Munster properly effected service of process on BWI.

### Facts

On February 25, 2000, Munster and Groce were involved in an automobile accident. At the time, Groce was an employee of BWI, a corporation that later was dissolved in July 2001. On February 15, 2002, Munster filed a complaint against Groce and BWI. Munster attempted to serve both Groce and BWI by certified mail. Both mailings were returned undelivered on March 1, 2002; the mailing to Groce was marked "attempted not known" and the mailing to BWI was marked with a new address. App. p. 2.

No further action was taken in the case until December 2003, when Munster obtained new counsel. Second attempts to serve BWI and Groce by certified mail were again returned undelivered, with the marking on each "forwarding order expired." *Id.* Munster then attempted to serve BWI and Groce through the Indiana Secretary of State, as provided by Indiana Trial Rule 4.10. Munster did not file a praecipe for summons with the trial court, but instead delivered copies of the summons and complaint directly to the Secretary of State. Munster provided the Secretary of State with addresses for BWI and Groce, the Secretary of State mailed copies of the summons and complaint to those addresses, and they were returned undelivered as before.

At least by December 2003, BWI's former insurer learned of Munster's lawsuit and filed an answer on behalf of BWI and Groce, which among other things asserted the affirmative defenses of lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process. On January 22, 2004, counsel also filed a motion to dismiss on behalf of BWI and Groce under Indiana Trial Rules 12(B)(2), (4), and (5), alleging a lack of personal jurisdiction due to insufficiency of process and service of process. The motion also sought dismissal due to failure to prosecute pursuant to Indiana Trial Rule 41(E).

On January 26, 2004, Steve Harris, an investigator hired by Munster's counsel, delivered a copy of the summons and complaint to the residence of George Mikesell, who was listed as a director of BWI in its articles of incorporation. Mikesell was not home at the time, but his wife Lois personally received the summons and complaint. Harris phoned Mikesell the next day and confirmed that he received the summons and complaint. Also on January 26 and January 31, 2004, Harris attempted personal delivery of the summons and complaint at Groce's alleged former places of residence and employment, but could not locate him.

On May 17, 2004, the trial court dismissed Munster's complaint pursuant to Trial Rules 12(B)(2), (4), and (5); it did not dismiss under Trial Rule 41(E). It stated in its order that Munster had not complied with Trial Rule 4.10 allowing for service

through the Secretary of State because he had not filed a praecipe for summons with the trial court first. As for the January 26, 2004 delivery of the summons and complaint to Lois Mikesell, the trial court struck the acknowledgment of service she had signed and concluded that she had no actual or apparent authority to accept service on BWI's behalf.

On June 14, 2004, Munster filed a motion to correct error. On the same date, Munster also filed, with the trial court this time, a praecipe for summons for service upon BWI and Groce through the Secretary of State. Using the same addresses as before, the Secretary of State again sent certified mail addressed to BWI and Groce, and the mailings again were returned undelivered. On August 24, 2004, the trial court denied the motion to correct error. Munster now appeals.

## Analysis

### I. Standard of Review

Technically, Munster is appealing from the denial of a motion to correct error. We generally review a trial court's denial of a motion to correct error for an abuse of discretion. *Principal Life Ins. Co. v. Needler*, 816 N.E.2d 499, 502 (Ind. Ct.App.2004). Except for pointing out Munster's re-attempt to effect service through the Secretary of State, however, the motion to correct error in this case merely asked the trial court to reconsider its earlier ruling on the motion to dismiss.

BWI and Groce have not claimed that they lacked insufficient contacts with Indiana for the trial court to exercise jurisdiction over them and base their arguments solely on insufficient service of process. Indiana Trial Rule 12(B)(5) allows for dismissal of a complaint if there is insufficient service of process; Trial Rule 12(B)(2) similarly allows for a dismissal of a complaint if there is a lack of personal jurisdiction. A trial court does not acquire personal jurisdiction over a party if service of process is inadequate. *King v. United Leasing, Inc.*, 765 N.E.2d 1287, 1290 (Ind. Ct.App.2002).

When a defendant argues a lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. *Anthem Ins. Companies, Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1231 (Ind.2000). The defendant ultimately bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of jurisdiction is apparent on the face of the complaint. *Id.* The existence of personal jurisdiction over a defendant is a question of law and a constitutional requirement to rendering a valid judgment, mandated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 1237. Thus, we review a trial court's determination regarding personal jurisdiction de novo. *Id.* at 1238. To the extent a trial court may make findings of jurisdictional facts, these findings are reviewed for clear error if they were based on in-court testimony. *Id.* at 1238. If, however, only a paper record has been presented to the trial court, we are in as good a position as the trial court to determine the existence of jurisdictional facts and will employ de novo review as to those facts. *Id.* at n. 12.

Here, the trial court ruled on the motion to dismiss based entirely on a paper record, consisting of records of Munster's attempts at service and affidavits of Harris and Lois Mikesell. No testimony was presented at the hearings conducted on the motion to dismiss and motion to correct error. Thus, our review of the trial court's personal jurisdiction ruling is entirely de novo. Additionally, we note that although the trial court in dismissing

Munster's complaint provided an explanation as to why it was doing so, we will affirm a trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record. *See Minks v. Pina*, 709 N.E.2d 379, 381 (Ind.Ct.App. 1999), *trans. denied.*

## II. Service as to Groce

Groce argues that Munster's attempts to serve him with process were insufficient to permit the trial court to exercise jurisdiction over him.[1] This question has two aspects: whether there was compliance with the Indiana Trial Rules regarding service, and whether such attempts at service comported with the Due Process Clause of the Fourteenth Amendment. We conclude that due process required more than was attempted here with respect to service on Groce.

 In the seminal case regarding due process and notice, the Supreme Court held that the Due Process Clause requires at a minimum "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id.* at 314, 70 S.Ct. at 657. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportu-

nity to present their objections." *Id.* "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315, 70 S.Ct. at 657. The Court held that alternatives to personal service and actual notice of a suit, such as publication, are permissible

> where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.... [Parties] whose interests or whereabouts could not *with due diligence* be ascertained come clearly within this category.

*Id.* at 317, 70 S.Ct. at 658–59 (emphasis added). *Mullane* thus clearly indicates that although it is acceptable in some instances to proceed with a lawsuit by using a service method that it is unlikely to give actual notice to an interested party, this is only the case if that party's whereabouts cannot reasonably and in the exercise of due diligence be ascertained.

The textbook example of constructive service and notice of a lawsuit is service by publication, as exemplified by *Mullane*. Indiana Trial Rule 4.13 allows the use of this form of "service" or notice, but only if the party seeking publication files with the trial court "supporting affidavits [showing] that diligent search has been made that the defendant cannot be found, has concealed his whereabouts, or has left the state." This rule, therefore, preemptively

---

1. For the sake of clarity, we are referring to Groce as if he has actual knowledge of and has participated in this lawsuit. In fact, there is no indication in the record that he personally has any knowledge of it. Likewise, although we refer to BWI throughout the opinion, it no longer exists as a functioning company.

requires a party to swear to "due diligence" in attempting to locate an interested party before he or she may seek service by publication.

In the present case, Munster never sought service by publication on Groce. Instead, before turning to the Secretary of State, the CCS indicates that he attempted two certified mailings to Groce, once in February 2002 and once in December 2003. The first mailing was to an apartment address in Muncie, and there is no evidence in the record as to what address was used for the second mailing; the address provided to the Secretary of State was for a street address in Muncie. There is also no evidence in the record as to what information was used to determine Groce's possible whereabouts. In any event, none of these mailings resulted in actual service to Groce, as both mailings were returned to sender. This court has held, "Unclaimed service is insufficient to establish a reasonable probability that the defendant received adequate notice and to confer personal jurisdiction." *King*, 765 N.E.2d at 1290. We have also held, "Service upon a defendant's former residence is insufficient to confer personal jurisdiction." *Mills v. Coil*, 647 N.E.2d 679, 681 (Ind.Ct. App.1995), *trans. denied.* Additionally, Indiana Trial Rule 4.1(A)(1), which allows for service by certified mail, requires that a return receipt must show receipt of the letter in order for service to be effective.

After the December 2003 failed mailing to Groce, Munster attempted to perfect service through the Secretary of State. Indiana Trial Rule 4.4(A)(2) states:

Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or. a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent: ... causing personal injury or property damage by an act or omission done within this state ....

Trial Rule 4.4(B) goes on to state:

A person subject to the jurisdiction of the courts of this state under this rule may be served with summons:

(1) As provided by Rules 4.1 (service on individuals), 4.5 (service upon resident who cannot be found or served within the state), 4.6 (service upon organizations), 4.9 (in rem actions); or

(2) The person shall be deemed to have appointed the Secretary of State as his agent upon whom service of summons may be made as provided in Rule 4.10.

Finally, Trial Rule 4.10 provides:

Whenever, under these rules or any statute, service is made upon the Secretary of State or any other governmental organization or officer, as agent for the person being served, service may be made upon such agent as provided in this rule.

(1) The person seeking service or his attorney shall:

(a) submit his request for service upon the agent in the praecipe for summons, and state that the governmental organization or officer is the agent of the person being served;

(b) state the address of the person being served as filed and recorded pursuant to a statute or valid agreement, or if no such address is known, then his last known mailing address, and, if no such address is known, then such shall be stated;

(c) pay any fee prescribed by statute to be forwarded together with sufficient copies of the summons,

affidavit and complaint, to the agent by the clerk of the court.

(2) Upon receipt thereof the agent shall promptly:

(a) send to the person being served a copy of the summons and complaint by registered or certified mail or by other public means by which a written acknowledgment of receipt may be obtained;

(b) complete and deliver to the clerk an affidavit showing the date of the mailing, or if there was no mailing, the reason therefor;

(c) send to the clerk a copy of the return receipt along with a copy of the summons;

(d) file and retain a copy of the return receipt.

■ Initially, the parties spend much time arguing as to whether Rule 4.10 required Munster to file a praecipe for summons with the trial court, instead of directly with the Secretary of State, before service could be effected under this rule; the trial court also based its ruling on Munster's not first filing a praceipe for summons with it. It would appear to us that the rule contemplates filing the praecipe with the trial court, which would then forward the necessary materials to the Secretary of State for service. Most tellingly, subsection 1(c) of the rule requires the person seeking service to "pay any fee prescribed by statute to be forwarded together with sufficient copies of the summons, affidavit and complaint, to the agent *by the clerk of the court*." (Emphasis added). This seems to say that the clerk of court forwards the summons, affidavit, complaint, and any required fee to the Secretary of State or other government officer, which necessarily means the clerk was provided with those materials in the first place by the party seeking service. We also reject Munster's argument that a

party seeking service through the Secretary of State does not have to follow Rule 4.10 to the letter. Subsection (1) clearly states that the party seeking such service "shall" do so as delineated.

Even assuming, however, that it was not fatal to Munster's service attempt that he initially filed a praecipe for summons directly with the Secretary of State instead of with the trial court, there is a fundamental problem in this case. It is evident that attempting to serve Groce through the Secretary of State would, at best, amount only to constructive service and constructive notice of the pending lawsuit. Munster had already twice attempted to mail summons to Groce unsuccessfully. Having the Secretary of State make the mailing instead was not going to somehow give Groce actual notice of the lawsuit.

■ As noted, the Due Process Clause requires that in order for constructive notice of a lawsuit to be sufficient, a party must exercise due diligence in attempting to locate a litigant's whereabouts. *See Mullane*, 339 U.S. at 317, 70 S.Ct. at 659. A party must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. Rule 4.4(B)(2) does allow for service through the Secretary of State with respect to a defendant "whose residence is unknown," and presumably such service is effective even if the defendant does not receive actual notice of the lawsuit; Rule 4.10 does not expressly require actual notice. We conclude, however, that in order for such service to be constitutionally effective there must be a showing by the plaintiff or party who sought such service that due diligence to ascertain the defendant's current whereabouts was exercised and service through

the Secretary of State was reasonable under the circumstances.

 We are also aware that neither Rule 4.4(B)(2) nor Rule 4.10 requires a party seeking service through the Secretary of State to provide an affidavit asserting that due diligence to locate the defendant was unsuccessfully attempted, in contrast to service by publication under Rule 4.13. If such service is subsequently challenged by a motion to dismiss or motion to set aside a default judgment, however, we conclude that a plaintiff is required to present evidence of unsuccessful due diligence in locating the defendant, which in turn necessitated the use of constructive notice and service. Otherwise, parties who wished to serve opposing parties whose whereabouts they did not know could always sidestep the due diligence requirements of notice by publication and simply ask for service through the Secretary of State, which is not a proper reading of the Indiana Trial Rules and the Due Process Clause.

 With issues as important as due process, notice of a lawsuit, and personal jurisdiction, we will not presume from the scant evidence in this record that Munster used due diligence in attempting to ascertain Groce's current whereabouts. Harris provided the following affidavit describing his efforts to serve Groce: "I duly pursued and exhausted all known information to perfect service upon Joe Groce by attempting to deliver to his possession a true copy of the Summons and Complaint in the above-captioned manner at his former places of residence and employment." App. p. 46. Harris also swore elsewhere that he asked the Mikesells if they were aware of Groce's current whereabouts. There is no evidence in the record as to what information was used to ascertain Groce's alleged former places of residence and employment. There is no evidence in the record as to any attempts to locate his *current* whereabouts, aside from asking the Mikesells.[2] There is no evidence in the record that Groce was or is attempting to hide his whereabouts.

Harris' bare-bones affidavit does not permit the conclusion that due diligence was used to locate Groce's current whereabouts, or that service via the Secretary of State, using an address that apparently was known to be invalid, was reasonably calculated to provide Groce notice of this lawsuit. *Cf. Bays v. Bays*, 489 N.E.2d 555, 557–59 (Ind.Ct.App.1986) (finding sufficient due diligence to justify service by publication where husband had spoken to wife's parents eleven times in three years and parents stated they did not know wife's whereabouts, and where husband employed private investigator who searched for wife for three years and provided letter to trial court detailing efforts to locate wife).[3] As such, the trial court never obtained personal jurisdiction over Groce in a manner consistent with the Due Process Clause. Dismissal of Munster's

---

**2.** At the hearing on the motion to dismiss, counsel for Munster asserted that other steps were taken to ascertain Groce's whereabouts that were not recounted in Harris' affidavit. Arguments of counsel, however, are not evidence that courts may consider in making factual determinations. *El v. Beard,* 795 N.E.2d 462, 467 (Ind.Ct.App.2003).

**3.** *Bays* does not necessarily establish the minimum that should be required for a showing of due diligence in locating a missing litigant.

We do note that there is no evidence in this case of a public records or internet search for Groce or the use of a skip-trace service to find him. In fact, we discovered, upon entering "Joe Groce Indiana" into the Google™ search engine, an address for Groce that differed from either address used in this case, as well as an apparent obituary for Groce's mother that listed numerous surviving relatives who might have known his whereabouts.

lawsuit as to him for lack of personal jurisdiction and insufficient service of process was proper.

### III. Service as to BWI

Next, we address whether Munster effectively served BWI with process. We decline to address Munster's attempts to serve BWI by certified mail and through the Secretary of State, and solely address service at the Mikesell's household. The question of how to serve a defunct corporation like BWI has not previously been addressed by Indiana case law. The trial rules and Indiana Business Corporation Law, however, provide sufficient guidance for how to resolve this issue.

Indiana Code Section 23–1–45–5(b)(5), which governs voluntary dissolution of a corporation and which apparently is what occurred to BWI, expressly provides that dissolution "does not ... prevent commencement of a proceeding by or against the corporation in its corporate name ...." As far as how to serve a defunct corporation with process, BWI points out that subsection (7) of Section 23–1–45–5(b) provides that the authority of the registered agent of a corporation does not terminate with the corporation's dissolution. BWI also notes that Indiana Code Section 23–1–24–4(a) states, "A corporation's registered agent is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the corporation." BWI essentially argues that pursuant to this statute, Munster was required to attempt to serve BWI's registered agent, Robert Compton, instead of Mikesell, and such attempt never occurred.

Subsection (c) of Section 23–1–24–4, however, plainly states, "This section does not prescribe the only means, or necessarily the required means, of serving a corporation." The Official Comment to this statutory provision of the Indiana Business Corporation Law confirms that methods of service permitted by the Indiana Trial Rules but not expressly mentioned by Section 23–1–24–4 should be viewed as supplementary to the statute, not inconsistent with it. The Official Comment further cites *Burger Man, Inc. v. Jordan Paper Products, Inc.*, 170 Ind.App. 295, 352 N.E.2d 821 (1976) as an "illustrative" case where this court approved service upon a corporation's "executive officer" rather than the corporation's registered agent, much like what happened in this case. The Indiana Trial Rules and the Indiana Business Corporation Law permitted Munster to attempt service upon someone other than BWI's registered agent.

Indiana Trial Rule 4.6(A) provides that service upon a domestic organization may be made "upon an executive officer thereof ...." Trial Rule 83 states, " 'Executive officer' of an organization includes the president, vice president, secretary, treasurer, cashier, *director*, chairman of the board of directors or trustees, office manager, plant manager, or subdivision manager, partner, or majority shareholder." (Emphasis added). Munster provided BWI's 1986 articles of incorporation to the trial court, which listed George Mikesell as one of its three directors. BWI presented no evidence that Mikesell was not still a director of this closely-held corporation at the time of its dissolution in 2001. As the party seeking dismissal of a complaint on personal jurisdiction grounds, we conclude it was BWI's burden to prove by a preponderance of the evidence that Mikesell was not a director of BWI at the time of its dissolution and to demonstrate that the articles of incorporation's listing of directors was not accurate as of 2001. *See Anthem Ins. Companies,* 730 N.E.2d at 1231. Also, although Trial Rules 4.6(A) and 83 are not crystal clear on this point, we also hold that in the case of a dissolved

corporation, it is appropriate to serve process upon a former director of the corporation at the time of its dissolution. *See Warren v. Dixon Ranch Co.*, 123 Utah 416, 260 P.2d 741, 743 (1953) (holding that service upon former director of defunct corporation was effective service upon the corporation under trial rules similar to Indiana's).

■ We now address whether Mikesell was adequately served so as to confer jurisdiction upon BWI. Trial Rule 4.6(B) provides that service shall be made upon a proper representative of the corporation, as listed by Rule 4.6(A), in a manner provided for service upon individuals elsewhere in the Trial Rules. Rule 4.6(B) also states that generally such service cannot knowingly be made at the person's dwelling house or place of abode. This restriction, however, clearly is inapplicable in the case of a corporation such as BWI that is no longer functioning and, a fortiori, no longer has a business address. We conclude it was proper to attempt service at Mikesell's dwelling house or place of abode.

■ Next, we address the effect of leaving the summons and complaint with Lois Mikesell at the Mikesell residence. We find it unnecessary to address whether Lois had the authority to accept service of process on behalf of her husband. Even assuming that she did not, Trial Rule 4.1(A)(3) allows for service by leaving a copy of the summons and complaint at a person's dwelling house or usual place of abode. Thus, even if Lois had not personally been handed the summons and complaint by Harris and he had merely left the documents at the house, this would have constituted service upon Mikesell.[4]

■ We do observe that there is nothing in the record to indicate that a copy of the summons only was subsequently mailed to the Mikesell residence, which is required as a second step in effective service by Trial Rule 4.1(B) when the complaint and summons has been left at a person's dwelling under Trial Rule 4.1(A)(3). This omission is not fatal to Munster's attempt to serve Mikesell and, hence, BWI, in light of Harris' affidavit recounting that he spoke to Mikesell over the phone the day after delivery of the summons and complaint and Mikesell confirmed that he received them. BWI presented no evidence to refute Harris' memory of events. We have previously held that failure to follow up delivery of a complaint and summons under Trial Rule 4.1(A)(3) with mailing of a summons under Trial Rule 4.1(B) does not constitute ineffective service of process if the subject of the summons does not dispute actually having received the complaint and summons. *See Boczar v. Reuben*, 742 N.E.2d 1010, 1016 (Ind.Ct.App.2001).

Finally, BWI argues that service upon it via service upon Mikesell was ineffective because the summons was directed only to BWI, not to Mikesell or any other person, such as a "director" or "officer" of BWI. BWI relies upon *Volunteers of America v. Premier Auto*, 755 N.E.2d 656 (Ind.Ct. App.2001). There, we held that service upon Volunteers of America ("VOA") was ineffective because none of the initial attempts were directed to a person; instead, the summonses were simply addressed to "Volunteers of America." *Id.* at 660. We also held that this defect in service was not saved by Trial Rule 4.15(F), which provides: "No summons or the service thereof shall be set aside or be adjudged insuffi-

---

4. BWI has never asserted that Harris did not deliver the summons and complaint to Mike-

sell's dwelling house or usual place of abode.

cient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." *Id.* We additionally noted that the first time Premier sent a garnishment proceeding notice to VOA addressed to the "Highest Ranking Officer" was also the first time a "proper person" for corporate service received notice of the lawsuit and default judgment. *Id.*

Here, the record does seem to indicate that the summons for BWI was addressed only to BWI, and not to any specific individual or title. This case, however, clearly differs from *VOA* because that case concerned mailings to VOA's office that subsequently were never brought to the attention of a high-ranking corporate officer. Here, by contrast, the summons and complaint were delivered directly to Mikesell's residence and he acknowledged receipt of them; there was no chance that the summons and complaint would fail to follow the proper internal corporate channels to a high-ranking officer or director because they were delivered directly to a director. As such, even if there was a technical defect in the summons to BWI, the method of service by delivery at Mikesell's residence still was reasonably calculated to inform BWI of the pending lawsuit and, in fact, did provide such notice. Trial Rule 4.15(F) excuses minor, technical defects in the method of service where actual service has been accomplished. *See Reed Sign Service, Inc. v. Reid,* 755 N.E.2d 690, 696 (Ind.Ct.App.2001), *trans. denied.* In sum, Munster sufficiently complied with the Indiana Trial Rules so as to effect service upon BWI and give the trial court personal jurisdiction over it. Likewise, as we have indicated the method of service on BWI was reasonably calculated so as to provide it with notice of the lawsuit and, therefore, comports with the Due Process Clause.

*See Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. We reverse the trial court's grant of the motion to dismiss with respect to BWI.

### Conclusion

Munster has failed to demonstrate that his attempts to serve Groce comported with the Due Process Clause and the trial court was correct to dismiss the lawsuit as to Groce for lack of personal jurisdiction. With respect to BWI, we find sufficient compliance with the Indiana Trial Rules and Due Process Clause regarding service of process to allow the lawsuit against it to proceed. We affirm in part, reverse in part, and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

KIRSCH, C.J., and BAKER, J., concur.