887 N.E.2d 950 (2008)
In the Matter of the ADOPTION OF D.C., H.R., Appellant-Respondent,
v.
R.C., Appellee-Petitioner.
No. 22A01-0709-CV-425.
Court of Appeals of Indiana.
May 29, 2008.
*953 Karl L. Mulvaney, Nana Quay Smith, Kelly R. Eskew, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.
Debra S. Andry, Mattox & Wilson, LLP, New Albany, IN, Attorney for Appellee.

OPINION
BRADFORD, Judge.
Appellant-Respondent H.R. ("Biological Mother") appeals the trial court's order denying her motion to set aside an adoption decree in favor of Appellee-Petitioner R.C. ("Adoptive Mother") on the basis that Indiana Code section 31-19-14-4 bars her challenge as untimely. Upon appeal, Biological Mother claims that the adoption decree, which was entered without notice to her, was void for lack of personal jurisdiction and violated her due process rights. Concluding that Indiana Code section 31-19-14-4 is unconstitutional as applied to the instant circumstances, we reverse and remand to the trial court for a hearing on the merits of Adoptive Mother's adoption petition.

FACTS AND PROCEDURAL HISTORY[1]
H.R. ("Biological Mother") and C.C. ("Father"), whose marriage was dissolved on June 26, 1997, are the biological parents of D.C., who was born May 19, 1994. Pursuant to the dissolution of their marriage, Biological Mother received primary custody of D.C. In July 1997, Biological Mother lost her place of residence, and the trial court subsequently awarded D.C.'s custody to Father. Biological Mother was granted visitation rights and ordered to pay support.
On November 22, 1998, Father married Adoptive Mother. In February 1999, Father joined the military and was stationed at Fort Campbell, Kentucky, near Hopkinsville. He did not notify the divorce court of his move to Kentucky. In August 2001, Biological Mother, who was unaware of Father's move, was notified that her support was to be paid in Christian County, Kentucky. Biological Mother subsequently learned from Father's former neighbor that Father had joined the army and moved to Hopkinsville. Biological Mother registered with and made child support payments through Friend of the Court in Hopkinsville. Biological Mother's payments satisfied only a small part of her full support obligation. Biological Mother visited D.C. in Hopkinsville. According to Biological Mother, Father denied some of her efforts to exercise her visitation rights.
Father was later reassigned to Fort Bragg, North Carolina. He did not notify the divorce court of this change in address. Biological Mother did not visit D.C. after he moved with Father to Fort Bragg. Biological Mother continued to make some child support payments.[2]
In December 2002, Father moved back to 600 Country Club Drive in New Albany. *954 He lived there until May 2006. He notified Biological Mother about this change of address. Biological Mother re-established visitation. Biological Mother's last visit with D.C. was in approximately December 2002, roughly within a month of Father's return to New Albany.
On June 27, 2003, Biological Mother, through her attorney, petitioned the court for a modification of visitation. The trial court set the matter for an August 26, 2003 hearing. Biological Mother's petition and her attorney's appearance certify that copies of each were sent to Father's address at 600 Country Club Drive. Father claimed he did not receive these documents but agreed that his address listed in the documents was accurate. According to Biological Mother, she did not have sufficient funds for additional legal representation. She contacted multiple attorneys and Legal Aid, none of whom took her case. Biological Mother did not contact Adoptive Mother or Father in the years 2004 or 2005.
On January 27, 2005, Adoptive Mother petitioned the court to adopt D.C. At the time of the 2005 adoption petition, Biological Mother was over $14,000 in arrears on her support obligation and had not contacted D.C. or Father in over a year. The petition listed the last known address for Biological Mother as 9636 Scarborough Avenue in Louisville, Kentucky.
Both parties agree that Biological Mother did not receive notice of the adoption proceedings. Although notice of the adoption petition was sent to Biological Mother at the Scarborough Avenue address, delivery of this notice was unsuccessful. Adoptive Mother's attorney published a three-week notice in the Louisville Voice-Tribune Newspaper. The Voice-Tribune is a weekly newspaper, and the notice was published in the section for classified advertisements. Adoptive Mother made no other attempts to contact Biological Mother.
After the petition was filed, Adoptive Mother and Father continued to receive child support payments from Biological Mother through the Hopkinsville Friend of the Court. Friend of the Court records indicated Biological Mother's Scarborough Avenue address was valid in 2003 but that in June of 2004, Biological Mother's address had changed to 4526 Kennedy Place in Louisville. These records further indicated that on February 28, 2005, approximately a month after the adoption petition was filed, Biological Mother's address had again changed, this time to 6207 Ledgewood, also in Louisville. In addition, Friend of the Court records indicated Biological Mother's outdated addresses, including an El Paso, Texas, address. Father knew Biological Mother's grandmother lived in El Paso, Texas. Adoptive Mother and Father made no attempt to locate Biological Mother's current address through Friend of the Court.
Biological Mother's child support payments for years 2003 through the final hearing totaled $4403.10, including a payment made three days before the final adoption hearing. On July 5, 2005, the trial court granted Adoptive Mother's adoption petition and issued an adoption decree. Father subsequently notified Friend of the Court of the adoption, indicated he wished to terminate support, and requested that it notify Biological Mother of this. Biological Mother continued to make child support payments after the adoption decree was entered.[3] These payments included a single payment of $62.31, on July 16, 2005, as well as nine payments totaling $2070 in 2006, and six payments *955 totaling $2112 in 2007. Father received all of Biological Mother's support payments.
In January of 2007, Biological Mother discovered that D.C. had been adopted by Adoptive Mother. Biological Mother contacted Legal Volunteers. On March 13, 2007, Biological Mother filed her motion for relief from judgment alleging, inter alia, that the judgment was void for lack of personal service. In denying Biological Mother's motion, the trial court determined that the adoption proceedings had been defective for lack of personal notice but that pursuant to the terms of Indiana Code section 31-19-14-4, the time period to challenge the adoption due to any such defect had expired. This appeal follows.

DISCUSSION AND DECISION
On appeal, Biological Mother challenges the trial court's denial of her motion to set aside the decree by claiming that the decree was void for lack of personal jurisdiction due to Adoptive Mother's defective service of process. Adoptive Mother responds by arguing that her efforts at service substantially complied with the Indiana Trial Rules. Adoptive Mother further argues that regardless of the adequacy of service, Biological Mother is barred from challenging the adoption decree on any basis pursuant to Indiana Code section 31-19-14-4.

I. Lack of Personal Jurisdiction

A. Standard of Review
The decision of whether to set aside a judgment is usually given substantial deference on appeal. See Adoption of J.D.C., 751 N.E.2d 747, 748 (Ind.Ct.App. 2001). Personal jurisdiction, however, is a question of law. LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 965 (Ind.2006) (citing Anthem Ins. Co., Inc. v. Tenet Healthcare Corp., 730 N.E.2d 1227, 1238 (Ind.2000), superseded by rule on other grounds). As with other questions of law, a determination of the existence of personal jurisdiction is entitled to de novo review by appellate courts. Id. This court does not defer to the trial court's legal conclusion as to whether personal jurisdiction exists. Id. However, personal jurisdiction turns on facts, and findings of fact by the trial court are reviewed for clear error. Id. Clear error exists where the record does not offer facts or inferences to support the trial court's findings or conclusions of law. Rogers v. Rogers, 876 N.E.2d 1121, 1126 (Ind.Ct.App.2007), trans. denied.

B. Analysis
Biological Mother argues that the trial court lacked personal jurisdiction over her in the instant case and that the adoption decree is therefore necessarily null and void. Ineffective service of process prohibits a trial court from having personal jurisdiction over a respondent. Volunteers of Am. v. Premier Auto Acceptance Corp., 755 N.E.2d 656, 659 (Ind.Ct. App.2001). A judgment rendered without personal jurisdiction over a defendant violates due process and is void. See Stidham v. Whelchel, 698 N.E.2d 1152, 1154 (Ind.1998). Because a void judgment is a complete nullity and without legal effect, it may be collaterally attacked at any time, and the "reasonable time" limitation under Indiana Trial Rule 60(B)(6)[4] does not apply. See id. at 1154, 1156.
The question as to whether process was sufficient to permit a trial court to exercise jurisdiction over a party involves *956 two issues: whether there was compliance with the Indiana Trial Rules regarding service, and whether such attempts at service comported with the Due Process Clause of the Fourteenth Amendment. Munster v. Groce, 829 N.E.2d 52, 58 (Ind. Ct.App.2005).

1. Whether Process Complied with Indiana Trial Rules
Biological Mother first argues that service of process in the instant case did not comply with the Indiana Trial Rules. Here, the Notice of Adoption stated that Biological Mother's consent was not required because Biological Mother had abandoned D.C. In circumstances where such consent is not required, Indiana Code section 31-19-4.5-2 (2004) provides that notice must be given to the person from whom consent is allegedly not required, and that such notice shall be pursuant to Indiana Trial Rule 4.1 if the person's name and address are known and pursuant to Rule 4.13 if the person's name and address are not known.

a. Indiana Trial Rule 4.1
Indiana Trial Rule 4.1 provides the following for service of process to a known address:
(A) In General. Service may be made upon an individual, or an individual acting in a representative capacity, by:
(1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or
(2) delivering a copy of the summons and complaint to him personally; or
(3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or
(4) serving his agent as provided by rule, statute or valid agreement.
The parties dispute whether Petitioner's Exhibit 2, a certified mail receipt, demonstrates compliance with Rule 4.1. Regardless of whether Adoptive Mother attempted service by certified mail, Rule 4.1(A)(1) requires that such service be accompanied by a return receipt showing receipt of the letter. There is no dispute that Adoptive Mother's attempt at service of process, whether or not it was sent by certified mail, was returned as undelivered. Unclaimed service upon a former residence is insufficient, in and of itself, to establish a reasonable probability that a party received notice or to confer personal jurisdiction. See Munster, 829 N.E.2d at 59.

b. Indiana Trial Rule 4.13
Indiana Trial Rule 4.13 provides the following, in pertinent part, for service by publication:
(A) Praecipe for summons by publication. In any action where notice by publication is permitted by these rules or by statute, service may be made by publication. Summons by publication may name all the persons to be served, and separate publications with respect to each party shall not be required. The person seeking such service, or his attorney, shall submit his request therefor upon the praecipe for summons along with supporting affidavits that diligent search has been made that the defendant cannot be found, has concealed his whereabouts, or has left the state, and shall prepare the contents of the summons to be published. The summons shall be signed by the clerk of the court *957 or the sheriff in such manner as to indicate that it is made by his authority.
Adoptive Mother's filings did not include the submission of affidavits of a diligent search as required by Indiana Trial Rule 4.13. Given the plain language requirement in Rule 4.13 that a party must file an affidavit of due diligence prior to service by publication, Adoptive Mother's filings fell short of the requirements of Rule 4.13. See Matter of Adoption of M.A.S., 695 N.E.2d 1037, 1040 (Ind.Ct.App.1998) (reversing adoption petition on grounds that notice to putative father which did not comply with requirements of applicable trial rule governing service of process was defective).

2. Whether Service Comported with Due Process
Adoptive Mother claims that her failure to strictly comply with the Indiana Trial Rules regarding publication was largely a technicality, and that her efforts at service were reasonably calculated to notify Biological Mother of the pending proceedings.[5] As Indiana Trial Rule 4.15(F) provides, "No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him. . . ."
We acknowledge that the trial rules provide for the validity of summonses which are technically defective but nevertheless satisfy due process. Under the facts of this case, however, Rule 4.15 is inapplicable because the trial court determined that Adoptive Mother's efforts were not reasonably calculated to inform Biological Mother of the adoption proceedings. These efforts therefore did not satisfy due process.
"`An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Munster, 829 N.E.2d at 58 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "`[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'" Id. at 58 (quoting Mullane, 339 U.S. at 315, 70 S.Ct. 652).
Here, the trial court made the factual determination that a diligent search would have uncovered Biological Mother's actual address. As the trial court found, Adoptive Mother could have easily obtained Biological Mother's address through a "simple inquiry to the Office of Child Support Enforcement." Appellant's App. p. 8. Not incidentally, Adoptive Mother and Father were in adequate contact with Biological Mother to continue to receive her child support payments up to three days before the adoption hearing, as well as afterward, yet they were somehow sufficiently out of touch to notify her of the adoption action. See Munster, 829 N.E.2d at 61-62 (observing constructive service violated due process where party used "bare-bones affidavit" which did not permit conclusion that due diligence was used to ascertain location *958 of party to be served.) Given the trial court's factual findings, we conclude that Adoptive Mother's efforts at service were not reasonably calculated to apprise Biological Mother of the adoption proceedings and therefore did not comport with due process. Accordingly, the trial court did not have personal jurisdiction over Biological Mother, and the adoption proceedings terminating her parental rights were therefore void. See Stidham, 698 N.E.2d at 1154-55.

II. Preclusive Effect of Indiana Code Section 31-19-14-4
We next address the trial court's conclusion that Indiana Code section 31-19-14-4 bars Biological Mother's untimely challenge to the jurisdictional defect in the adoption proceedings. Biological Mother argues that as a matter of due process, section 31-19-14-4 cannot operate to bar her challenge to the adoption proceedings as void ab initio.

A. Standard of Review
Statutory interpretation is a question of law which this court reviews de novo. In re Guardianship of E.N., 877 N.E.2d 795, 798 (Ind.2007). The best evidence of legislative intent is surely the language of the statute itself, and courts strive to give the words in a statute their plain and ordinary meaning. Prewitt v. State, 878 N.E.2d 184, 186 (Ind.2007). The Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. Id. "If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute." Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996).

B. Analysis
Indiana Code section 31-19-14-2 (2006) specifies the permissible time period for challenging adoption decrees:
Except as provided in section 3 of this chapter, if a person whose parental rights are terminated by the entry of an adoption decree challenges the adoption decree not more than the later of:
(1) six (6) months after the entry of an adoption decree; or
(2) one (1) year after the adoptive parents obtain custody of the child;
the court shall sustain the adoption decree unless the person challenging the adoption decree establishes, by clear and convincing evidence, that modifying or setting aside the adoption decree is in the child's best interests.
A companion statute, Indiana Code section 31-19-14-4, further provides as follows:
After the expiration of the period described in section 2 of this chapter, a person whose parental rights are terminated by the entry of an adoption decree may not challenge the adoption decree even if:
(1) notice of the adoption was not given to the child's putative father; or
(2) the adoption proceedings were in any other manner defective.
Here, Adoptive Mother had custody of D.C. from the date of her marriage to Father in 1998, and the adoption decree was entered on July 5, 2005. Biological Mother filed her motion to set aside the decree on March 13, 2007, more than one year after Adoptive Mother obtained custody and more than six months after the entry of the decree. The parties agree that Biological Mother's challenge to the adoption decree did not fall within the *959 specified time period in section 31-19-14-4.
We conclude that section 31-19-14-4, when applied to bar Biological Mother's challenge to the adoption proceedings in this case, creates an unconstitutional due process violation. Biological Mother has the fundamental right to make decisions regarding the care, custody, and control of her children, and this right falls within the protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); see also In re Paternity of M.G.S., 756 N.E.2d 990, 1005 (Ind.Ct.App.2001) ("It is well settled that the right to raise one's children is an essential, basic right, more precious than property rights, within the protection of the Fourteenth Amendment to the U.S. Constitution."), trans. denied. Parental rights are sufficiently vital that, under the appropriate circumstances, they merit constitutional protection that will supersede state law. M.G.S., 756 N.E.2d at 1005.
In Stidham v. Whelchel, 698 N.E.2d 1152, 1154-56 (Ind.1998), the Indiana Supreme Court, interpreting Indiana Trial Rule 60(B)(6), clarified that a default judgment rendered without personal jurisdiction over a defendant violated due process, was null and void, and could be set aside at any time. Similarly here, Biological Mother sought relief from judgment pursuant to Trial Rule 60 on the grounds that the judgment was void for lack of personal jurisdiction. Biological Mother's challenge was not merely to a defect in the proceedings. Her claim instead was that the proceedings were a nullity. Under Stidham, due process protections mandate that there be no time limitation for such a fundamental challenge. 698 N.E.2d at 1155-56. The application of section 31-19-14-4 to the instant circumstances to impose a time limitation for fundamental jurisdictional challenges infringes on these due process protections. Accordingly, we conclude that section 31-19-14-4 is unconstitutional as applied to this case.
Although unnecessary for the resolution of this appeal, we must question whether the General Assembly, in enacting section 31-19-14-4, anticipated the scenario at issue here. The plain language of section 31-19-14-4 provides that a person whose parental rights are terminated may not lodge an untimely challenge to an adoption decree even if, under subsection (1), the putative father did not receive notice; or, under subsection (2), the proceedings were in any other manner defective.
Although this State has a well-recognized interest in providing stability and permanence for children, we are dubious that the General Assembly, in spite of its broad language, intended to permit the termination of constitutionally-protected parental rights under circumstances providing less notice to the affected party than is required, for example, to obtain a default judgment on a credit card debt. While Biological Mother posits as an alternative interpretation that section 31-19-14-4(2) bars only those challenges to defects in adoption proceedings which would render them voidable, but not void, this interpretation suggests subsection (1) is mere surplusage. Interpreting a statute in such a way as to render some of it mere surplusage violates standard principles of statutory construction. Wolfe v. Eagle Ridge Holding Co., LLC., 869 N.E.2d 521, 528 (Ind.Ct.App.2007).
A plausible interpretation of section 31-19-14-4 which avoids the constitutional dilemma at issue and adheres to standard principles of statutory construction is that untimely challenges to notice are addressed exclusively in subsection (1), and that challenges to any other alleged defects *960 besides notice are addressed in subsection (2). Because, under this interpretation, section 31-19-14-4(1) bars only those untimely challenges alleging inadequate notice to putative fathers specifically, the statute does not provide for untimely challenges alleging inadequate notice to biological mothers and therefore does not bar them.
Such statutorily distinct treatment for putative fathers does not run afoul of the Constitution. In Lehr v. Robertson, 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), the United States Supreme Court determined, with respect to fathers, that their substantial due process protections arose out of their commitment to the responsibilities of parenthood rather than from any biological link to the child. The Court additionally determined that, to the extent one parent had established a custodial relationship with the child and the other parent had not, a State's according different rights to each parent did not violate the Equal Protection Clause of the Fourteenth Amendment. Id. at 267-68, 103 S.Ct. 2985.
The above plausible interpretation of section 31-19-14-4, which provides for fewer procedural protections for putative fathers, utilizes both subsections of the statute and is consistent with constitutional principles. See Mathews v. Hansen, 797 N.E.2d 1168, 1172-73 (Ind.Ct.App.2003) (endorsing constitutionality of section 31-19-14-4 as it applies to putative fathers), trans. denied. Nevertheless, because this interpretation, or the General Assembly's intent, is not fully and immediately apparent, we invite the General Assembly to revisit and clarify section 31-19-14-4.

III. Conclusion
Having concluded that the application of Indiana Code section 31-19-14-4 to the instant circumstances violates Biological Mother's due process rights, we reverse the trial court's denial of her motion for relief from judgment and remand for a hearing on the merits of the adoption petition.
The judgment of the trial court is reversed, and the cause is remanded with instructions.
BARNES, J., and CRONE, J., concur.
NOTES
[1] We heard oral argument in this matter on May 8, 2008, and wish to thank counsel for their fine presentations.
[2] Biological Mother's child support payments to the Hopkinsville Friend of the Court totaled $195 in 2001; $1680 in 2002; $2430 in 2003; $934.62 in 2004; $1100.79 in 2005; $2070 in 2006; and $2112 in 2007. At the time of the 2005 adoption petition, Biological Mother was over $14,000 in arrears on her support obligation.
[3] While Father testified that he gave this notification to Friend of the Court, there is no evidence that Father's purported notification was ever given to Biological Mother.
[4] Rule 60(B)(6) provides for a motion for relief from judgment on the basis that the judgment is void.
[5] Adoptive Mother additionally challenges Biological Mother's motion for relief from judgment pursuant to Trial Rule 60 on the grounds that Biological Mother did not assert a meritorious defense. This challenge is without merit. If a judgment is void, whether from faulty process or otherwise, a Trial Rule 60(B) claimant need not show a meritorious defense or claim. Moore v. Terre Haute First Nat'l Bank, 582 N.E.2d 474, 477 (Ind.Ct.App. 1991).