

**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**JOHN T. SCHLAFER**
**CATHERINE A. CLEMENTS**
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**RICHARD A. MANN**
**LISA M. JOACHIM**
**JENNIFER R. MANN**
**TODD D. SMALL**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Adoption of C.A.H., minor, ) | |
| ) | |
| J.N.E., ) | |
| ) | |
|     Appellant-Respondent, ) | |
| ) | |
|         vs. ) | No. 49A02-1302-AD-129 |
| ) | |
| L.M.H., ) | |
| ) | |
|     Appellee-Petitioner. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D08-1109-AD-37923

**July 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

J.N.E. ("Biological Mother") appeals the trial court's order denying her motion for relief of judgment to set aside an adoption decree in favor of L.M.H. ("Adoptive Mother"). Biological Mother raises the following restated issue for our review: whether the trial court erred when it denied her motion because she contends that the adoption decree, which was entered without notice to her, was void for lack of personal jurisdiction and violated her due process rights.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Biological Mother gave birth to C.A.H. on February 14, 2002 in Indianapolis, Indiana while married to Father. The marriage between Biological Mother and Father was dissolved on November 9, 2007 in Marion Superior Court. After the dissolution, C.A.H. was in the custody of his maternal grandfather ("Grandfather"). On July 27, 2009, while Biological Mother was incarcerated, Father was awarded custody of C.A.H. The custody order allowed Biological Mother to have "supervised parenting time supervised by a professional agency such as Kid's Voice to be arranged by [Biological Mother] at her cost and coordinated with [Father]." *Pet'r's Ex*. 4. The order also appointed Adoptive Mother, who had not yet married Father, to be the alternative custodian in the event that Father became incapacitated. *Id*. Father and Adoptive Mother were subsequently married on August 6, 2010.

On September 29, 2011, Adoptive Mother filed a petition for the adoption of C.A.H. Through a summons dated September 29, 2011, service was attempted via the Marion County Sheriff on Biological Mother at 1475 North Delaware Street, Apartment

2

5, Indianapolis, Indiana, 46202. The service was returned as unable to locate the individual, and the sheriff left a copy on the door and mailed a copy. In addition, Adoptive Mother's counsel sent a summons via United States Certified Mail Return Receipt Requested and United States First Class Mail to the Delaware Street address as well as to 7334 East 47th Street, Indianapolis, Indiana, 46226, which was an address located through a web-based subscription-required database called Accurint.com, a division of Lexis-Nexis. *Tr.* at 41-43. Each of these summons, sent via certified mail, were returned to counsel's office as "unclaimed." *Pet'r's Ex.* 2.

Biological Mother alleged that she lived at the Delaware Street address from October 2010 until June 14, 2011, when she signed a lease for her current address in Covington, Indiana. However, her lease at the Delaware Street address was through October 2011. According to certified records from the Bureau of Motor Vehicles ("BMV"), Biological Mother resided at the Delaware address when service was first attempted. Adoptive Mother frequently drove on Delaware Street on her commute home from classes, and she observed Biological Mother outside of the 1475 North Delaware Street address one day in October 2011, which was during the time that Adoptive Mother had been attempting to serve Biological Mother with the summons.

On October 26, 2011, Adoptive Mother attempted service at Biological Mother's last known place of employment at a Perkin's Restaurant on 82nd Street in Indianapolis, Indiana. The return of the sheriff's service stated that, as of October 28, 2011, Biological Mother no longer worked at that address. Adoptive Mother then attempted to serve Biological Mother via the Hancock County Sheriff with a summons dated November 12,

3

2011, at her last known good address according to the trial court that has jurisdiction over the dissolution, which was at 99 North 600 West, Greenfield, Indiana. The service was returned stating that Biological Mother no longer lived at that address.

Father had not been provided with a current phone number or address by Biological Mother for many years. He was never notified in writing nor was anything ever filed with the dissolution court, notifying him of Biological Mother's intent to relocate after her release from prison or any subsequent moves. Father no longer had contact with any mutual friends from the time when he was married to Biological Mother, and he did not think that she had a good relationship with any of her family members, including Grandfather. Father believed that the relationship between Biological Mother and Grandfather was poor due to a protective order Biological Mother had filed against Grandfather in the past.

Adoptive Mother and Father did not make any attempts to obtain contact information for Biological Mother either through Grandfather or Facebook. Biological Mother had contacted both Adoptive Mother and Father through Facebook in December 2010, and both had blocked her from further communication with them via Facebook. Additionally, Adoptive Mother and Father never asked Grandfather for contact information for Biological Mother, even though C.A.H. had visitation with Grandfather during the time the petition for adoption was pending.

When the previous attempts at service had failed, Adoptive Mother filed an affidavit of diligent inquiry and perfected service via publication in the Indianapolis Recorder through a summons dated November 15, 2011 and published on November 16,

4

2011, November 23, 2011, and December 9, 2011.  On July 5, 2012, the trial court heard

Adoptive Mother's petition for adoption and entered a decree granting her petition for the

adoption of C.A.H.  On October 18, 2012, Biological Mother filed a motion for relief

from judgment, and a hearing was held on the motion on January 2, 2013.  After taking

the testimony under advisement, the trial court entered an order denying Biological

Mother's motion for relief from judgment on January 8, 2013.  Biological Mother now

appeals.

## DISCUSSION AND DECISION

The decision of whether to set aside a judgment is usually given substantial

deference on appeal.  *In re Adoption of D.C.*, 887 N.E.2d 950, 955 (Ind. Ct. App. 2008)

(citing *In re Adoption of J.D.C.,* 751 N.E.2d 747, 748 (Ind. Ct. App. 2001)).  Personal

jurisdiction, however, is a question of law.  *Id.* (citing *LinkAmerica Corp. v. Albert,* 857

N.E.2d 961, 965 (Ind. 2006)).  As with other questions of law, a determination of the

existence of personal jurisdiction is entitled to *de novo* review by appellate courts.  *Id.*

This court does not defer to the trial court's legal conclusion as to whether personal

jurisdiction exists.  *Id.*  However, personal jurisdiction turns on facts, and findings of fact

by the trial court are reviewed for clear error.  *Id.*  Clear error exists where the record

does not offer facts or inferences to support the trial court's findings or conclusions of

law.  *Id.* (citing *Rogers v. Rogers,* 876 N.E.2d 1121, 1126 (Ind. Ct. App. 2007), *trans.*

*denied*).

Biological Mother argues that the trial court lacked personal jurisdiction over her

in the present case and that the adoption decree is therefore necessarily void.  Ineffective

service of process prohibits a trial court from having personal jurisdiction over a respondent. *Cotton v. Cotton*, 942 N.E.2d 161, 164 (Ind. Ct. App. 2011). A judgment rendered without personal jurisdiction over a defendant violates due process and is void. *Id.* The question as to whether process was sufficient to permit a trial court to exercise jurisdiction over a party involves two issues: whether there was compliance with the Indiana Trial Rules regarding service, and whether such attempts at service comported with the Due Process Clause of the Fourteenth Amendment. *In re D.C.*, 887 N.E.2d at 955-56 (citing *Munster v. Groce*, 829 N.E.2d 52, 58 (Ind. Ct. App. 2005)).

Biological Mother first contends that the service of process in the instant case did not comport with the Indiana Trial Rules. Here, the petition for adoption stated that Biological Mother's consent was not required because Biological Mother had abandoned C.A.H. In circumstances where such consent is not required, Indiana Code section 31-19-4.5-2 provides that notice must be given to the person from whom consent is allegedly not required, and that such notice shall be pursuant to Indiana Trial Rule 4.1 if the person's name and address are known and, pursuant to Rule 4.13, if the person's name and address are not known.

Indiana Trial Rule 4.1 provides the following regarding service of process upon an individual whose name and address are known:

> **(A) In General.** Service may be made upon an individual, or an individual acting in a representative capacity, by:
>
> > (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his

6

residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or

(2) delivering a copy of the summons and complaint to him personally; or

(3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or

(4) serving his agent as provided by rule, statute or valid agreement.

**(B) Copy Service to Be Followed With Mail.** Whenever service is made under Clause (3) or (4) of subdivision (A), the person making the service also shall send by first class mail, a copy of the summons without the complaint to the last known address of the person being served, and this fact shall be shown upon the return.

Ind. Trial Rule 4.1.

Here, Adoptive Mother attempted to serve Biological Mother with the notice of adoption through several different methods and at multiple addresses pursuant to Indiana Trial Rule 4.1. Service was attempted via the Marion County Sheriff as well as sent via United States Certified Mail Return Receipt Requested and United States First Class Mail to Biological Mother's last known address. The summons was also sent to another address in Indianapolis, which was located through a web-based subscription-required database called Accurint.com. Adoptive Mother further attempted service at Biological Mother's last known place of employment and attempted to serve Biological Mother via the Hancock County Sheriff at her last known good address according to the trial court that has jurisdiction over the dissolution. However, all of these attempts were returned as undelivered or unclaimed. "Unclaimed service upon a former residence is insufficient, in and of itself, to establish a reasonable probability that a party received notice or to confer personal jurisdiction." *In re D.C.*, 887 N.E.2d at 956.

7

As a result of Adoptive Mother not having any other address for Biological Mother, Indiana Code section 31-19-4.5-2 allowed her to serve Biological Mother under Indiana Trial Rule 4.13 with the notice of adoption. Trial Rule 4.13 provides in pertinent part:

> **(A) Praecipe for summons by publication.** In any action where notice by publication is permitted by these rules or by statute, service may be made by publication. Summons by publication may name all the persons to be served, and separate publications with respect to each party shall not be required. The person seeking such service, or his attorney, shall submit his request therefor upon the praecipe for summons along with supporting affidavits that diligent search has been made that the defendant cannot be found, has concealed his whereabouts, or has left the state, and shall prepare the contents of the summons to be published. The summons shall be signed by the clerk of the court or the sheriff in such manner as to indicate that it is made by his authority.
>
> . . . .
>
> **(C) Publication of summons.** The summons shall be published three [3] times by the clerk or person making it, the first publication promptly and each two [2] succeeding publications at least seven [7] and not more than fourteen [14] days after the prior publication, in a newspaper authorized by law to publish notices, and published in the county where the complaint or action is filed, where the res is located, or where the defendant resides or where he was known last to reside. If no newspaper is published in the county, then the summons shall be published in the county in this state nearest thereto in which any such paper may be printed, or in a place specially ordered by the court. The person seeking the service or his attorney may designate any qualified newspaper, and if he fails to do so, the selection may be made by the clerk.

Biological Mother does not challenge the contents of the published notice, but instead contends that the notice was insufficient because service by publication is a "last resort and should only be attempted when reasonable efforts to locate a party have failed." *Appellant's Br*. at 11. She alleges that Adoptive Mother did not conduct a

diligent search before resorting to service by publication and that there were other, reasonable methods, including asking Grandfather and contacting Biological Mother directly on Facebook, which should have been utilized. Because she claims a diligent search was not conducted, Biological Mother argues that service by Adoptive Mother did not comport with due process and the adoption decree should be void.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re J.H.*, 898 N.E.2d 1265, 1271 (Ind. Ct. App. 2009), *trans. denied*. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.*

In the present case, before serving Biological Mother by publication, Adoptive Mother attempted to serve her at her last known address on Delaware Street in Indianapolis via both Marion County Sheriff and certified mail. Adoptive Mother believed this address to be Biological Mother's address because it was the most current address listed in Biological Mother's BMV records, and Adoptive Mother had observed Biological Mother outside the building at the address around the time service was attempted at the Delaware Street address. Additionally, Adoptive Mother attempted to serve Biological Mother at her last known place of employment and at two other addresses, one of which was located through Accurint.com database, and the other was

9

her last known good address according to the trial court that has jurisdiction over her dissolution.

Biological Mother asserts that there were other methods that were more likely to determine her address and to accomplish service, including inquiring to Grandfather or sending her a message on Facebook. However, this argument is speculative because she did not present any evidence that Grandfather even knew her address. She also did not present any evidence that a Facebook search for Biological Mother by her new last name or her previous married name would result in an address or her contact information.

Biological Mother contends that the present case is similar to two Indiana cases, where adoptive parents' unsuccessful attempts to give notice to a biological mother were found to be insufficient. In the case of *In re D.C.*, 887 N.E.2d 950, a panel of this court found that the adoptive mother, who also failed to file an affidavit describing any diligent search conducted, could have easily obtained biological mother's address through a simple inquiry to the Office of Child Support Enforcement because adoptive mother and father were receiving child support payments prior to and subsequent to the adoption hearing, and therefore, adoptive mother's efforts at service were not reasonably calculated to notify biological mother. *Id.* at 957-58. The instant case is distinguishable from *D.C.* as, here, Biological Mother was not ordered to pay child support and was not registered at any such government agency where an inquiry could have ascertained her address. In the case of *In re the Adoption of L.D.*, 938 N.E.2d 666 (Ind. 2010), our Supreme Court found a diligent search was not made when a party failed to serve biological mother at an address where she had previously been served and also

10

affirmatively concealed the adoption. *Id*. at 671. That case is also distinguishable because, here, Adoptive Mother had not previously served Biological Mother at any address, and in fact, used Biological Mother's last known address for her attempts to serve the adoption petition.

We, therefore, conclude that Adoptive Mother complied with the Indiana Trial Rules regarding service and her service of Biological Mother by publication was sufficient because Adoptive Mother made diligent efforts to ascertain Biological Mother's whereabouts. Further, Adoptive Mother's service of Biological Mother with the petition for adoption comported with due process. Accordingly, the trial court had personal jurisdiction over Biological Mother, and the adoption proceedings were not void.

Affirmed.

VAIDIK, J., and PYLE, J., concur.